IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

**21-13749**

---

**UNITED STATES OF AMERICA,**
Plaintiff-Appellee,

vs.

**DANIEL BAKER**,
Defendant-Appellant.

---

**BRIEF OF PLAINTIFF-APPELLEE
UNITED STATES OF AMERICA**

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

---

**JASON R. COODY**
United States Attorney

**LAZARO P. FIELDS**
Assistant United States Attorney
Northern District of Florida
Florida Bar No. 1004725
111 North Adams Street, 4th Floor
Tallahassee, FL 32301
(850) 942-8430
Lazaro.Fields@usdoj.gov

ECCA NO. 21-13749                    United States v. Daniel Baker
DC NO. 4:21cr10-AW

## **CERTIFICATE OF INTERESTED PERSONS**

BAKER, DANIEL ALAN, DEFENDANT-APPELLANT

COODY, JASON R., UNITED STATES ATTORNEY

DAVIES, ROBERT G., ASSISTANT UNITED STATES ATTORNEY

FIELDS, LAZARO P., ASSISTANT UNITED STATES ATTORNEY

FITZPATRICK, MARTIN A., UNITED STATES MAGISTRATE JUDGE

FRANK, MICHAEL J., UNITED STATES MAGISTRATE JUDGE

KUNZ, STEPHEN M., ASSISTANT UNITED STATES ATTORNEY

MURRELL, RANDOLPH P., COUNSEL FOR DEFENDANT-APPELLANT

STAMPELOS, CHARLES A., UNITED STATES MAGISTRATE JUDGE

VALLEJO, ELIZABETH L., COUNSEL FOR DEFENDANT-APPELLANT

WINSOR, ALLEN C., UNITED STATES DISTRICT JUDGE

I HEREBY CERTIFY that the above constitutes a complete list of interested persons to this appeal as described in the Rules of the United States Court of Appeals for the Eleventh Circuit Rev. (12/01/21), 11th Cir. R. 28-1(b) and 11th Cir. R. 26.1-1.

*/s/ Lazaro P. Fields*
LAZARO P. FIELDS
Assistant United States Attorney

## STATEMENT REGARDING ORAL ARGUMENT

The Government believes the issues and arguments are adequately addressed in the briefs, and therefore, does not request oral argument.

# TABLE OF CONTENTS

PAGE(S)

CERTIFICATE OF INTERESTED PERSONS ............................................ C-1 of 1

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF CONTENTS........................................................................... ii

TABLE OF CITATIONS .........................................................................iv

STATEMENT OF JURISDICTION.........................................................ix

STATEMENT OF THE ISSUES..............................................................1

STATEMENT OF THE CASE..................................................................2

    (i)     Course of Proceedings and Dispositions in the Court Below ...............2

    (ii)    Statement of Facts ................................................................2

    (iii)   Standards of Review.............................................................6

SUMMARY OF THE ARGUMENT ......................................................9

ARGUMENT AND CITATIONS OF AUTHORITY ...........................10

    I.     THE DISTRICT COURT DID NOT ERR, LET ALONE PLAINLY ERR, BY FAILING TO GRANT A JUDGMENT OF ACQUITTAL ON THE BASIS THAT THE DEFENDANT'S SPEECH WAS PROTECTED BY THE FIRST AMENDMENT ....................................................................10

    (i)     Incitement......................................................................21

    (ii)    True Threats .....................................................................24

    (iii)   Sufficiency of the Evidence ................................................28

    II.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN EXCLUDING IRRELEVANT

EVIDENCE OF OTHER THREATS TO THE
FLORIDA CAPITOL..............................................................32

III.    THE DISTRICT COURT DID NOT ABUSE ITS
DISCRETION IN EXCLUDING EXPERT TESTIMONY
REGARDING THE ROLE OF THE PEOPLE'S
PROTECTION UNITS ("YPG") BECAUSE THE
TESTIMONY WAS NOT RELEVANT AND WOULD
CONFUSE THE JURY .....................................................43

CONCLUSION ...................................................................47

CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(a)(7) .............................48

CERTIFICATE OF SERVICE ...............................................................48

# TABLE OF CITATIONS

**Cases**                                                                                     **Page(s)**

*American C.L. Union of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*,
   557 F.3d 1177 (11th Cir. 2009) ............................................................15

*Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981).........................39

*Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485 (1984)......................43

*Brady v. Maryland*, 373 U.S. 83 (1963) ..................................................44

*Brady v. United States*, 397 U.S. 742 (1970)...........................................24

*Brandenburg v. Ohio*, 395 U.S. 444 (1969)................................... 21, 23, 24

*Delaware v. Van Arsdall*, 475 U.S. 673 (1986)................................. 41, 46

*Dennis v. United States*, 341 U.S. 494 (1951) .........................................23

*Don's Porta Signs, Inc. v. City of Clearwater*, 829 F.2d 1051 (11th Cir. 1987).....14

*Elonis v. United States*, 575 U.S. 723 (2015) .........................................10

*Flanigan's Enterprises, Inc. of Ga. v. Fulton Cty., Ga.*, 596 F.3d 1265
   (11th Cir. 2010).....................................................................14

*Morse v. Frederick*, 551 U.S. 393 (2007)...............................................27

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982)....................................23

*Nevada v. Jackson*, 569 U.S. 505 (2013)...................................................7

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)...........................................14

*Noto v. United States*, 367 U.S. 290 (1961)...........................................22

*Piamba Cortes v. Am. Airlines, Inc.*, 177 F.3d 1272 (11th Cir. 1999) ...................38

*Puckett v. United States*, 556 U.S. 129 (2009) .........................................16

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) .................................................. 21, 24

*Ramos v. Louisiana*, 140 S. Ct. 1390 (2020) ........................................................... 24

*United States v. Alaboud*, 347 F.3d 1293 (11th Cir. 2003) ..................................... 15

*United States v. Almanzar*, 634 F.3d 1214 (11th Cir. 2011) ................................... 44

*United States v. Bacon*, 598 F.3d 772 (11th Cir. 2010) ........................................... 29

*United States v. Bowe*, 221 F.3d 1183 (11th Cir. 2000) .......................................... 46

*United States v. Brown*, 53 F.3d 312 (11th Cir. 1995) ...................................... 30, 31

*United States v. Browne*, 505 F.3d 1229 (11th Cir. 2007) ....................................... 28

*United States v. Calderon*, 127 F.3d 1314 (11th Cir. 1997) .................................... 29

*United States v. Callahan*, 702 F.2d 964 (11th Cir. 1983) ................................ 25, 40

*United States v. Carpenter*, 803 F.3d 1224 (11th Cir. 2015) ................................... 16

*United States v. Castillo*, 564 F. App'x 500 (11th Cir. 2014) ........................... 25, 40

*United States v. Castro*, 455 F.3d 1249 (11th Cir. 2006) ........................................ 17

*United States v. Charles*, 722 F.3d 1319 (11th Cir. 2013) ...................................... 17

*United States v. Dillard*, 795 F.3d 1191 (10th Cir. 2015) ....................................... 25

*United States v. Ellisor*, 522 F.3d 1255 (11th Cir. 2008) ........................................ 30

*United States v. Estrada*, 969 F.3d 1245 (11th Cir. 2020) ...................................... 40

*United States v. Fleury*, 20 F.4th 1353 (11th Cir. 2021) .................................... 15, 28

*United States v. Flores*, 572 F.3d 1254 (11th Cir. 2009) ......................................... 29

*United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) ......................................... 8

*United States v. Gillis*, 938 F.3d 1181 (11th Cir. 2019) ..........................................46

*United States v. Godwin*, 765 F.3d 1306 (11th Cir. 2014) ......................................29

*United States v. Green*, 818 F.3d 1258 (11th Cir. 2016) ..........................................6

*United States v. Green*, 873 F.3d 846 (11th Cir. 2017) ..........................................42

*United States v. Holt*, 777 F.3d 1234 (11th Cir. 2015) ..............................................6

*United States v. Hough*, 803 F.3d 1181 (11th Cir. 2015) ........................................30

*United States v. Howell*, 719 F.2d 1258 (5th Cir. 1983) .................................. 25, 40

*United States v. Hurn*, 368 F.3d 1359 (11th Cir. 2004) ..........................................42

*United States v. Jeri*, 869 F.3d 1247 (11th Cir. 2017) ..............................................42

*United States v. Jordan*, 635 F.3d 1181 (11th Cir. 2011) ........................................16

*United States v. Kendrick*, 682 F.3d 974 (11th Cir. 2012) ......................................40

*United States v. Khan*, 937 F.3d 1042 (7th Cir. 2019) ............................................40

*United States v. Kosma*, 951 F.2d 549 (3d Cir. 1991) .................................... 25, 40

*United States v. Langford*, 647 F.3d 1309 (11th Cir. 2011) ............................ 42, 46

*United States v. Man*, 891 F.3d 1253 (11th Cir. 2018) ............................................28

*United States v. Maxwell*, 579 F.3d 1282 (11th Cir. 2009) .......................... 7, 28, 29

*United States v. Mendez*, 117 F.3d 480 (11th Cir. 1997) ........................................42

*United States v. Mitrovic*, 890 F.3d 1217 (11th Cir. 2018) ................................ 7, 40

*United States v. Myers*, 550 F. App'x 837 (11th Cir. 2013) ......................................6

*United States v. Peters*, 403 F.3d 1263 (11th Cir. 2005) ........................................30

*United States v. Pilkington*, 583 F.2d 746 (5th Cir. 1978) ......................................39

*United States v. Ramirez-Flores*, 743 F.3d 816 (11th Cir. 2014)...........................6

*United States v. Rodriguez*, 398 F.3d 1291 (11th Cir. 2005)...................................16

*United States v. Sarras*, 575 F.3d 1191 (11th Cir. 2009) .........................................7

*United States v. Scheffer*, 523 U.S. 303 (1998) ..........................................................7

*United States v. Stevens*, 881 F.3d 1249 (10th Cir. 2018).......................................27

*United States v. Stock*, 728 F.3d 287 (3d Cir. 2013) ................................................40

*United States v. Straub*, 508 F.3d 1003 (11th Cir. 2007) ..........................................6

*United States v. Turner*, 474 F.3d 1265 (11th Cir. 2007)........................................31

*United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982) .............................. 33, 41

*United States v. Watts*, 896 F.3d 1245 (11th Cir. 2018)..........................................29

*United States v. Wheeler*, 776 F.3d 736 (10th Cir. 2015)........................................27

*United States v. Williams*, 390 F.3d 1319 (11th Cir. 2004)....................................30

*United States v. Zapata*, 139 F.3d 1355 (11th Cir. 1998).......................................38

*United States v. Zinn*, 321 F.3d 1084 (11th Cir. 2003)...................................... 6, 11

*Virginia v. Black*, 538 U.S. 343 (2003) ........................................................... 18, 24

*Watts v. United States*, 394 U.S. 705 (1969) ...........................................................14

*Webster v. Fall*, 266 U.S. 507 (1925) .......................................................................14

**Statutes**

18 U.S.C § 871(a) ......................................................................................................25

18 U.S.C. § 875(c) ..........................................................................26

18 U.S.C § 2339B ...........................................................................43

18 U.S.C § 3231 ............................................................................. ix

28 U.S.C § 1291 ............................................................................. ix

**Rules**

11th Circuit Rule 26.1-1 ...............................................................C-1

11th Circuit Rule 28-1(b)..............................................................C-1

11th Circuit Rule 36-2 .....................................................................6

Federal Rule of Appellate Procedure 32(a)(7)................................... iii, 48

Federal Rule of Criminal Procedure 23 .....................................25

United States Sentencing Guideline, Section 3C1.1................................20

## STATEMENT OF JURISDICTION

Pursuant to Title 28, United States Code, Section 1291, this Court has jurisdiction of appeals from all final decisions of the district courts of the United States except where a direct review may be had in the Supreme Court.  Pursuant to Title 18, United States Code, Section 3231, the district court had jurisdiction to preside over the trial in this case.

## STATEMENT OF THE ISSUES

### ISSUE I

**WHETHER THE DISTRICT COURT PLAINLY ERRED BY FAILING TO GRANT A JUDGMENT OF ACQUITTAL ON THE BASIS THAT THE DEFENDANT'S THREATS WERE CONSTITUTIONALLY PROTECTED SPEECH?**

### ISSUE II

**WHETHER THE DISTRICT COURT ERRED IN EXCLUDING EVIDENCE OF OTHER THREATS TO THE FLORIDA CAPITOL AROUND THE TIME OF THE INAUGURATION?**

### ISSUE III

**WHETHER THE DISTRICT COURT ERRED IN EXCLUDING EXPERT TESTIMONY REGARDING THE ROLE OF THE PEOPLE'S PROTECTION UNITS ("YPG")?**

## STATEMENT OF THE CASE

### (i)    Course of Proceedings and Dispositions in the Court Below

The Defendant was charged in a two-count indictment with transmitting threats in interstate commerce to kidnap or injure the person of another, in violation of Title 18, United States Code, Section 875(c). ECF No. 20. Following a jury trial, the Defendant was found guilty on both counts. ECF No. 77. The Defendant was sentenced, pursuant to a judgment entered on October 14, 2021, to 44 months' imprisonment and three years' supervised release. ECF No. 103. He was also ordered to pay a $200 special monetary assessment. *Id.* On October 25, 2021, the Defendant filed a timely notice of appeal. ECF No. 105.

### (ii)    Statement of Facts

In Fall 2020, law enforcement was monitoring the Defendant's social media accounts because the tenor of his posts was becoming increasingly violent. ECF No. 115 – p.41:9-14; Gov. Ex. 13, 15, 17-22. The Defendant posted about purchasing firearms, Gov. Ex. 13, 21; "slay[ing], enemies again," Gov. Ex. 15; dropping bombs on "Jacksonville Nazis," Gov. Ex. 20; and assaulting law enforcement, Gov. Ex. 22. On January 12, 2021, as alleged in Count One of the Indictment, the Defendant created a "Defend Tallahassee" Facebook event and posted the following in the details section:

> Armed racist mobs have planted the Confederate flag in the nation's Capital while announcing their plans to

2

storm every American state Capitol on or around inauguration day. We will fight back. We will circle the state Capitol and let them fight the cops and take the building. Then we will encircle them and trap them inside. We will drive them out of Tallahassee with every caliber available. They are staging an armed takeover so only an armed community can stop them! We can win! We have a duty to and a duty to win. We have already recruited an army armed combat veterans and volunteers. As we grow we must remember security. DO NOT RSVP TO THIS EVENT! JUST SHOW UP. WE ARE CHAOTIC MALESTROM OF WILLING HANDS. The plan is for the peaceful friends to March from Railroad square and MLK to the Capitol but DO NOT ENTER! DO NOT HELP COPS OR THE ENEMY! We must encircle them so they cannot escape down Apalachee Parkway. Militant friends will ride ahead in all sorts of wheeled vehicles, bikes, scooters, atv, motorcycle, car, truck and SUV. They will push down Tennessee St and around Cascades Park with vehicles and coral the trump terrorists into the Capitol building. The enemy will have high power rifles and explosives. The enemy is coming from every racist community in the area, including Alabama and Georgia. REMEMBER THAT THE COPS WONT PROTECT US BECAUSE THE COPS AND KLAN GO HAND IN HAND! If you are afraid to die fighting the enemy, then stay in bed and live. Call all of your friends and Rise Up!

ECF No. 115 – pp.41:15-43:3; Gov. Ex. 1B.

Two days later, in response to a news article about the Tallahassee Police Department being "fully staffed and prepared ahead of any potential Inauguration Day protests," the Defendant posted a flyer on the WTXL Tallahassee Facebook page, which stated:

CALL TO ARMS JANUARY 20TH!

> Armed racists have planted the confederate flag in America's Capitol as they openly declared that they WILL CONTINUE to wage an ARMED COUP at every American Capitol, including Tallahassee, on Inauguration Day.

> We need ALL FLORIDA RESIDENTS to RISE UP! Here in Florida we must encircle terrorists who attack the Capitol! Let them take the capitol and fight with cops, SURROUND THEM AND TRAP THEM INSIDE!

> Tally residents have answered the call to arms, including combat veterans. Join us! Help protect your community from terrorists. We WILL protect capitol RESIDENTS and CIVILIANS from armed racist mobs WITH EVERY CALIBER AVAILABLE.

> This is an armed COUP and can only be stopped by an armed community!

> If you're afraid to die fighting the enemy, stay in bed and live.

ECF No. 115 – pp.44:5-45:12; Gov. Ex. 2A-2B (hereinafter referred to as the "Call to Arms"). The Call to Arms included a picture of an AK-47 in the heading. Ex. 2B.

Within hours, the Government obtained a warrant pursuant to a criminal complaint for the Defendant's arrest for violating Title 18, United States Code, Section 875(c), and a search warrant for his residence. *See* ECF No. 1. The following morning, the warrants were executed, and the Defendant made his initial appearance before a United States Magistrate Judge. ECF No. 8. On January 21,

2021, a preliminary and detention hearing was held.  ECF No. 17.  On January 25, 2021, United States Magistrate Judge Michael J. Frank entered an order finding probable cause for the Defendant's arrest and a separate order detaining him pending trial, finding that he was a risk of nonappearance and a danger to the community.   ECF No. 18-19.   During the execution of the warrants, law enforcement seized firearms and ammunition from the Defendant's residence.  Gov. Ex. 32-33. After his arrest, the Defendant made several voluntary oral statements, including that he posted things online to scare people and that he would attempt to radicalize others in prison.  ECF No. 115 – p.87:14-22.

At trial, the Government introduced several of the Defendant's social media posts that pre-dated his January 12 and 14, 2021, posts, as evidence that the charged threats were true threats.  *See* Gov. Ex. 7-12(a), 13, 15, 17-28.  In addition, the Government introduced an excerpt of a documentary where the Defendant was featured in armed combat with the People's Protection Units ("YPG") in Syria.  Gov. Ex. 12B.  The jury also saw communications directly related to the Call to Arms charged in Count 2, Gov. Ex. 30, as well as the firearms and ammunition seized from the Defendant's residence, Gov. Ex. 32-33, and a .22 caliber AK-47 style rifle the Defendant purchased two days before his first charged post, Gov. Ex. 35-36.

### (iii)    <u>Standards of Review</u>

### <u>ISSUE I</u>

"When a defendant raises specific challenges to the sufficiency of the evidence in the district court, but not the specific challenge he tries to raise on appeal, we review his argument for plain error." *United States v. Green*, 818 F.3d 1258, 1278-79 (11th Cir. 2016); *United States v. Myers*, 550 F. App'x 837, 840 (11th Cir. 2013) (*per curiam*) (unpublished);[1] *United States v. Straub*, 508 F.3d 1003, 1010-11 (11th Cir. 2007).   Furthermore, regarding the clarity needed to preserve an issue for appeal, it is well-settled in this Circuit that:

> Whenever a litigant has a meritorious proposition of law which he is seriously pressing upon the attention of the trial court, he should raise the point in such clear and simple language that the trial court may not misunderstand it, and if his point is so obscurely hinted at that the trial court quite excusably may fail to grasp it, it will avail him naught to disturb the judgment on appeal.

*United States v. Zinn*, 321 F.3d 1084, 1087-88 (11th Cir. 2003); *accord Straub*, 508 F.3d at 1011.   "Thus, if a defendant fails to *clearly* articulate a specific objection," the objection is waived, and the appellate court confines its review to plain error.   *Zinn*, 321 F.3d at 1088, 1090, n.7 (emphasis in original); *accord United States v. Holt*, 777 F.3d 1234, 1261 n.18 (11th Cir. 2015); *United States v. Ramirez-Flores*, 743 F.3d 816, 821 (11th Cir. 2014); *Straub*, 508 F.3d at 1011.

---

[1]    The Government cites *Myers* and other unpublished cases as persuasive authority under 11th Cir. R. 36-2.

In the district court, the Defendant did not raise the argument, let alone clearly and specifically raise the argument, that his charged communications constituted First Amendment protected speech. *See* ECF No. 116 – pp.40:15-42:4. Accordingly, this Court's review of the First Amendment claim is for plain error.

This Court reviews the sufficiency of the evidence *de novo*. *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009).

## **ISSUES II & III**

"Whether the exclusion of evidence violated a constitutional guarantee is a legal question reviewed *de novo*." *United States v. Sarras*, 575 F.3d 1191, 1209 n.24 (11th Cir. 2009). "[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *United States v. Mitrovic*, 890 F.3d 1217, 1221 (11th Cir. 2018) (quoting *Nevada v. Jackson*, 569 U.S. 505, 509 (2013)). However, this Court has recognized that this right "is not absolute, and is subject to reasonable restrictions." *Id.* (citing *United States v. Scheffer*, 523 U.S. 303, 308 (1998)). "[S]tate and federal rule makers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Id*. (quoting *Scheffer*, 523 U.S. at 308).

7

The "trial judge's role as gatekeeper is to ensure that the factfinder bases its decision only on relevant and reliable information." *Id.* at 1222 (citing *United States v. Frazier*, 387 F.3d 1244, 1272 (11th Cir. 2004)). Thus, "[w]hile a criminal defendant must be given every meaningful opportunity to present a complete defense, in doing so he must comply with the procedural and evidentiary rules designed to facilitate a search for the truth." *Id.* (quoting *Frazier*, 387 F.3d at 1272).

## SUMMARY OF THE ARGUMENT

### ISSUE I

The Defendant's First Amendment argument should be reviewed for plain error, because the Defendant argues for the first time on appeal that his speech was constitutionally protected. The district court should be affirmed because the Defendant has not shown error, let alone plain error, given that the law is well-settled that threats of violence are not protected by the First Amendment. To the extent the Defendant makes a sufficiency of the evidence argument, the district court should be affirmed, because viewing the evidence in the light most favorable to the Government, the evidence was sufficient for a jury to find the Defendant's guilt on both counts.

### ISSUE II

The district court did not abuse its discretion in excluding irrelevant evidence of other threats to the Florida Capitol around the time of the Inauguration.

### ISSUE III

The district court did not abuse its discretion in excluding expert testimony regarding the role of the People's Protection Units ("YPG") because the testimony was not relevant and would confuse the jury.

## ARGUMENT AND CITATIONS OF AUTHORITY

## ISSUE I

**THE DISTRICT COURT DID NOT ERR, LET ALONE PLAINLY ERR, BY FAILING TO GRANT A JUDGMENT OF ACQUITTAL ON THE BASIS THAT THE DEFENDANT'S SPEECH WAS PROTECTED BY THE FIRST AMENDMENT.**

A. *The Defendant's First Amendment Claim is Subject to Plain Error Review*.

The Defendant's failure to preserve his First Amendment claim requires plain error review. To be sure, the Court need not decide what standard of review applies because, for the reasons set forth in this brief, there was no First Amendment violation.  However, assuming for the sake of argument, that the Court needed to resolve the standard of review, the plain error standard applies to the Defendant's First Amendment argument, which he has raised for the first time on appeal.

To establish a violation of Title 18, United States Code, Section 875(c), the Government must prove the Defendant:  (1) sent a message in interstate commerce containing a true threat to kidnap any person or injure the person of another and (2) transmitted the message "for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat."  *Elonis v. United States*, 575 U.S. 723, 740 (2015) (holding that section 875(c) contains a *mens rea*

10

requirement); Eleventh Circuit Pattern Jury Instructions, Criminal, O30.3 and comment; ECF No. 72 at 5.  A "true threat" is a serious threat—not idle talk, a careless remark, or something said jokingly—that is made under circumstances that would place a reasonable person in fear of being kidnapped or injured or another person being kidnapped or injured.  Eleventh Circuit Pattern Jury Instructions, Criminal, O30.3 and comment; ECF No. 72 at 5.

The Defendant argues the Government failed to establish a violation of section 875(c) by virtue of his speech being constitutionally protected, but he did not "clearly articulate" his First Amendment challenge in the district court.  *See Zinn*, 321 F.3d at 1088, 1090, n.7.  Specifically, after the Government rested its case-in-chief, counsel moved for a judgment of acquittal, stating, in part:

> I was going to ask the Court for a judgment of acquittal. I would say as a matter of law the government hasn't proven that there was a true threat. I think too given the evidence no reasonable jury could find Mr. Baker guilty of the offense. I say that on the basis of the objective part of the requirement. The threat was very much a conditional threat. It was conditioned upon some extremely unlikely events.
>
> . . .
>
> So you have an unlikely – based on unlikely series of events with a message communicated to a group that doesn't exist. And beyond that, I would argue that what Mr. Baker was talking about, defending the capitol, was entirely legal. Citizens do have a right to bear arms to protect the state. And for that reason alone, as well as with the others, our view is that as a matter of law the government has not proven that there was a true threat

11

and that no reasonable jury could find that this was a true
threat.

ECF No. 116 – pp.40:15-41:25.  When prodded by the district court whether the

argument was specific to the subjective or objective prongs of the *Elonis* test,

counsel confirmed it was "[a]ll based on the objective test."  ECF No. 116 –

p.42:1-4.

The lack of clarity that the First Amendment was implicated in the motion

for judgment of acquittal is further buttressed by the fact that Government counsel

limited his response to the Second Amendment, which is what it seemed like

defense counsel was arguing.

> Law enforcement exists.  National Guard exists.
> Individuals just can't suddenly go out there and say I'm
> going to commit an act of violence to protect the capitol
> from attacks. So we disagree with what defense counsel
> is arguing that he has a Second Amendment right to just
> go outside one day and say I'm going to go out and kill
> some protestors who may be attacking the capitol.

ECF No. 116 – p.42:21-25.  Moreover, in denying the motion, the district court did

not address the First Amendment in finding that a reasonable fact finder could find

the Defendant's communications were true threats.  ECF No. 116 – p.43:21-24.

When counsel renewed his motion for judgment of acquittal after the close of the

Defendant's case-in-chief, there was no further argument, and the district court

summarily denied the motion again.  ECF No. 116 – p.201:9-16.

The record is devoid of any instance in which counsel raised the First Amendment issue so the district court could decide it.[2]  Indeed, the jury was properly instructed they were not to concern themselves with the First Amendment, ECF No. 72 at 6, and defense counsel's only objection to that was that it would confuse the jury, ECF No. 116 – p.51:6-14.

To the extent the Defendant argues that *de novo* review is appropriate where the First Amendment is implicated by virtue of the Defendant's speech being at issue, Def. Brief at 16-17, 34-35, the authority he cites does not directly support that proposition.  For instance, *Bose Corp. v. Consumers Union of U.S., Inc.*, was a libel case where the Supreme Court noted, in dicta, that appellate courts have an obligation to independently review the record to ensure that First Amendment protections are not being unduly infringed upon.  466 U.S. 485, 499 (1984).  Imbedded in libel cases, such as *Bose Corp.*, is the seminal issue of whether, under bedrock First Amendment jurisprudence, the petitioner is a "public figure," which would preclude recovery under the First Amendment unless "actual malice" was

---

[2]    The only occasion counsel—arguably—asserted that the Defendant's speech was constitutionally protected, was in his memorandum regarding probable cause before the Honorable Michael J. Frank, the United States Magistrate Judge who presided over the preliminary and detention hearing.  *See* ECF No. 16.  Argument before the magistrate, however, where the issue was limited to probable cause and the Bail Reform Act, is insufficient to properly preserve a constitutional issue for appeal. *See* ECF No. 112 – p.35:2-9.  To be sure, the district court never had the occasion to review the magistrate's findings.

shown. *See New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). None of that is relevant to this case.

Similarly, in *Don's Porta Signs, Inc. v. City of Clearwater*, also cited by the Defendant, *see* Def. Brief at 34-35, this Court reviewed the judgment of the district court declaring the City of Clearwater's regulation of portable signs to be in violation of the First Amendment. 829 F.2d 1051 (11th Cir. 1987). Footnote 9 does not suggest that appellate courts are bound to undertake *de novo* review of any form of challenged speech by virtue of its status as speech. *Id*. at 1053 n.9. To be sure, the constitutional issue was properly preserved in *City of Clearwater*, because the district court granted injunctive relief on First Amendment grounds. *Id*. at 1052. The same is true for *Flanigan's Enterprises, Inc. of Ga. v. Fulton Cty., Ga.*, where the plaintiff directly challenged a county ordinance on free speech grounds in the district court. 596 F.3d 1265, 1269 (11th Cir. 2010).

Amici curiae seem to suggest that in *Watts v. United States*, 394 U.S. 705, 708 (1969) (*per curiam*), the Supreme Court "appears to have engaged" in an "independent review of the record in a true threats case." Amici Brief at 7. In *Watts*, the issue of whether the defendant had forfeited a First Amendment claim, such that it was subject to plain error review, was not before the Court. *Watts*, 394 U.S. at 705-08; *see also Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record neither brought to the attention of the court nor

14

ruled upon, are not to be considered as having been so decided as to constitute precedents."); *United States v. Alaboud*, 347 F.3d 1293, 1295 n.1 (11th Cir. 2003), *overruled on other grounds by United States v. Martinez*, 800 F.3d 1293 (11th Cir. 2015) (*per curiam*) (applying the plain error standard of review to a First Amendment challenge the defendant did not raise in the district court); *cf. United States v. Fleury*, 20 F.4th 1353, 1361-66 (11th Cir. 2021) (reviewing First Amendment challenges the defendant raised in the district court *de novo*).  In the present case, the Defendant raised a sufficiency of the evidence argument in the district court; the Defendant did not raise, let alone clearly and specifically raise, a First Amendment argument in the district court; and the Government is affirmatively arguing that this Court should apply the plain error standard to the Defendant's First Amendment claim on appeal.

The "constitutional facts" the Defendant submits are entitled to *de novo* review, *see* Def. Brief at 17, are related directly to "the district court's findings" regarding a government entity's motive for restricting speech, not the run-of-the-mill facts in a criminal case with constitutional implications.  *See American C.L. Union of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1206 (11th Cir. 2009) ("[W]e must determine the 'why' facts. Those are the core constitutional facts that involve the reasons the [government entity] took the challenged action . . . .").  In this case, the district court made no findings related to the Defendant's

15

speech—or for that matter, the enactment of section 875(c)—because it was never invited to. It follows, then, that whether the Defendant's speech is constitutionally protected is not subject to *de novo* review because it was not properly preserved for appeal.[3]

Plain error is an extremely high standard of review, under which the Defendant bears the burden of (1) establishing error; (2) that is plain; (3) that affected his substantial rights; and (4) that seriously affected the fairness, integrity or public reputation of judicial proceedings. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). This Court "exercise[s] plain error review 'sparingly, and only in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Carpenter*, 803 F.3d 1224, 1238 (11th Cir. 2015) (quoting *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005)). "Meeting all four prongs is difficult, as it should be." *Puckett*, 556 U.S. at 135 (cleaned up).

As to the first and second prongs of the plain error test, the Defendant has not shown the district court committed error, much less plain error. Regarding the second prong of the plain error test, "[w]hen the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United*

---

[3]    The Government concedes that, if the Court were to find that the First Amendment issue was preserved in the district court, this Court's review would be *de novo*. *See United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011).

*States v. Castro*, 455 F.3d 1249, 1253 (11th Cir. 2006) (*per curiam*) (internal quotation omitted); *accord United States v. Charles*, 722 F.3d 1319, 1331 (11th Cir. 2013).  Quite the contrary, well-settled law suggests the Defendant's speech lies outside the First Amendment's protections.  Applying plain error review, the district court should be affirmed for two principal reasons.

First, the Defendant has failed to show the district court committed error.  The Defendant was charged with transmitting threats in interstate commerce to kidnap or injure the person of another.  The Government introduced the charged communications and presented a chronology of social media posts illustrating their violent escalation in Fall 2020, which climaxed in mid-January 2021, mere days before the Inauguration.  Gov. Ex. 1-2, 7-8, 10-11, 13-29.  The Government also introduced evidence about the Defendant's military training and experience with the U.S. Army and the YPG.  Gov. Ex. 3; ECF No. 115 – pp.114:15-115:11; 116:5-11.  Finally, the jury saw the firearms and ammunition seized from the Defendant's residence, an AK-47 style rifle he purchased online and was due to take possession of, a Facebook conversation in which he attempted to purchase an AK-47 and a pistol, another in which he inquired about assaulting law enforcement at a protest, and statements he made to law enforcement about armed combat, enjoying the "thrill of the kill," radicalizing other prisoners, not wanting to be

captured alive, and, specific to his social media posts: that his intent was to scare people.  ECF No. 115 – pp.87:14-22; 123:10-12; 129:11-12; Gov. Ex. 22, 28.

The charged communications were true threats because they were "serious expression[s] of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black,* 538 U.S. 343, 359 (2003). Specifically, on January 12, 2021, the Defendant's Facebook post resulting in Count One stated, in relevant part:

> We will fight back . . . We will circle the state Capitol and let them fight the cops and take the building. **Then we will encircle them and trap them inside. We will drive them out of Tallahassee with every caliber available.** They are staging an armed takeover so only an armed community can stop them! . . . We have already recruited an army armed combat veterans and volunteers. As we grow we must remember security. DO NOT RSVP TO THIS EVENT! JUST SHOW UP. **WE ARE CHAOTIC MALESTROM OF WILLING HANDS.** The plan is for the peaceful friends to March from Railroad square and MLK to the Capitol but DO NOT ENTER! DO NOT HELP COPS OR THE ENEMY! **We must encircle them so they cannot escape down Apalachee Parkway** . . . REMEMBER THAT THE COPS WONT PROTECT US BECAUSE THE COPS AND KLAN GO HAND IN HAND! **If you are afraid to die fighting the enemy, then stay in bed and live.** Call all of your friends and Rise Up!

ECF No. 115 – pp.41:15-43:3; Gov. Ex. 1B (emphasis added).  Two days later, his Facebook post resulting in Count Two stated, in relevant part:

**CALL TO ARMS JANUARY 20TH!**

> We need ALL FLORIDA RESIDENTS to RISE UP!
> **Here in Florida we must encircle terrorists who
> attack the Capitol! Let them take the capitol and fight
> with cops, SURROUND THEM AND TRAP THEM
> INSIDE!** . . . Tally residents have answered the call to
> arms, including combat veterans . . . **We WILL protect
> capitol RESIDENTS and CIVILIANS from armed
> racist mobs WITH EVERY CALIBER AVAILABLE.
> This is an armed COUP and can only be stopped by
> an armed community! If you're afraid to die fighting
> the enemy, stay in bed and live.**

ECF No. 115 – pp.44:5-45:12; Gov. Ex. 2A-2B (emphasis added).  The flyer had a

picture of an AK-47 in the heading and photographs of seemingly injured

individuals at the bottom.  Gov. Ex. 2B.

As to Count One, the post expressed an intent to "encircle" and "trap []

inside" individuals who protested at the Florida State Capitol.  Gov. Ex. 1B.  The

Defendant continued, expressing an intent to "drive them out of Tallahassee with

every caliber available," *id*., which the Government argued to the jury was a

reference to firearms, ECF No. 116 – pp.216:1-7; 218:11-12.  In his post, the

Defendant noted that others had been recruited to engage in this attack, asked

people not to respond, ostensibly to minimize law enforcement's ability to

determine the number of individuals present, and concluded that those who were

afraid to die, should stay in bed alive.  Gov. Ex. 1B.

The Defendant articulated similar sentiments in his Call to Arms charged in Count Two, except this time, the title of his post: "CALL TO ARMS JANUARY 20TH!" more directly communicated his desire to engage in a violent clash on January 20, 2021—Inauguration Day. Again, he solicited others to join him and "encircle terrorists" and "SURROUND THEM AND TRAP THEM INSIDE!" Gov. Ex. 2B. He further noted they would use "EVERY CALIBER AVAILABLE," and encouraged others to stay home if they wanted to live. *Id*.

On both occasions, he expressed a serious intent to (a) kidnap others—by encircling and trapping them inside the Florida Capitol—and (b) injure others—by, *inter alia*, soliciting armed individuals to drive them out with every caliber available. Most notably, in both charged communications, he encouraged those who wanted to live, and therefore, not fight the "enemy," to stay home. The facts the Defendant relies upon to support his argument that his posts were political hyperbole, are, in large part, his own *ipse dixit*, in that they regurgitate his own trial testimony, which the jury clearly discredited.[4]   *See* Def. Brief at 3-16. Accordingly, the Defendant has failed to show the district court committed error.

---

[4]   It bears mentioning that, although not an issue raised in this appeal, the district court imposed a two-point obstruction of justice enhancement pursuant to United States Sentencing Guideline, Section 3C1.1, finding that the Defendant committed perjury relating to his intent in transmitting his Call to Arms.  ECF No. 118 – pp.17:11-18:20.

Second, even assuming, for the sake of argument, the district court committed error, the Defendant has not shown the error was plain. The Defendant cites no case law from the Supreme Court or this Court holding that a defendant cannot be found guilty of transmitting a true threat in interstate commerce where the speaker threatened to kidnap or injure another. The law is well-settled to the contrary.

The Defendant appears to cast his charged social media posts into two categories of First Amendment protection: (1) incitement, Def. Brief at 27, and (2) true threats, *id*. at 30.[5] But communications that incite violence do not garner First Amendment protection. *See Brandenburg v. Ohio*, 395 U.S. 444, 449 (1969). Similarly, threats of violence, or "true threats," do not come within the First Amendment's ambit. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992) ("[T]hreats of violence are outside the First Amendment . . . .").

### 1. Incitement

Addressing incitement first, speech is constitutionally unprotected if it "is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg*, 395 U.S. at 447. Through his charged

---

[5] In passing, and without citation to authority, the Defendant seems to suggest that the true threat analysis is inappropriate for the facts in this case, given the calls to violence outlined in the posts were, at least from the Defendant's perspective, "improbab[le]." Def. Brief at 31. Because the Defendant does not go any further in advancing a third avenue of First Amendment protection, the Government's response will only address incitement and true threats.

Facebook communications, the Defendant incited and attempted to produce imminent lawless action—that is, a violent encounter at the Florida Capitol Complex on Inauguration Day—and was likely to incite or produce that action without law enforcement's intervention.  The jury heard substantial evidence about the Defendant's proficiency with weaponry, including the loaded firearms he possessed, and an AK-47 style rifle he purchased two days before his first charged post.  Gov. Ex. 32-33, 35-36.  Moreover, the charged communications related to an event—the Inauguration—that was to occur imminently and included substantial detail about how the siege was to occur.

The Supreme Court has drawn a clear distinction between the mere teaching of a resort to violence from instances where an individual, like the Defendant, is "preparing a group for violent action and steeling it to such action."  *Noto v. United States*, 367 U.S. 290, 297-298 (1961). The Defendant has not cited any authority that authorizes his engagement in a violent revolt in an alleged defense of a state capitol.  By urging others to "drive them out of Tallahassee with every caliber available," requesting that individuals not RSVP to his event, calling for "terrorists" at the Florida Capitol to be "encircle[d]" so they could not escape, soliciting others to take up arms, and creating a Defend Tallahassee Facebook event and Call to Arms on a specific date—Inauguration Day—which was to occur within about a week of his two charged posts, the Defendant was not merely

22

advocating, but was inciting or urging lawlessness. *See* Gov. Ex. 1B ("We will fight back . . . We will circle the state Capitol and let them fight the cops and take the building. Then we will encircle them and trap them inside. We will drive them out of Tallahassee with every caliber available."); Gov. Ex. 2B ("Here in Florida we must encircle terrorists who attack the Capitol! Let them take the capitol and fight with cops, SURROUND THEM AND TRAP THEM INSIDE! . . . We WILL protect capitol RESIDENTS and CIVILIANS from armed racist mobs WITH EVERY CALIBER AVAILABLE."). To be sure, he admitted during his testimony he was an anarchist. ECF No. 116 – pp.128:25-129:2; *see also Dennis v. United States*, 341 U.S. 494, 501 (1951) (noting that "preparation for revolution . . . carried to its logical conclusion, must lead to anarchy," which is not protected by the First Amendment).

His speech is a far cry from the advocacy *Brandenburg* protects. *Compare Brandenburg*, 395 U.S. at 446 ("We're not a revengent organization, but if our President, our Congress, our Supreme Court, continues to suppress the white, Caucasian race, it's possible that there might have to be some revengeance taken."), *with* Gov. Ex. 2B ("CALL TO ARMS JANUARY 20TH! . . . We WILL protect capitol RESIDENTS and CIVILIANS from armed racist mobs WITH EVERY CALIBER AVAILABLE. This is an armed coup and can only be stopped by an armed community! If you're afraid to die fighting the enemy, stay in bed and

23

live.").  Like *Brandenburg*, *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 926 (1982), cited by amici, does not afford the Defendant First Amendment protection because the speech in *Claiborne* occurred at a public rally and it contained "highly charged political rhetoric," neither of which are present here.  Accordingly, his speech should not be afforded any protection under *Brandenburg* and its progeny.

     *2.  True Threats*

The Defendant argues his posts cannot objectively be viewed as true threats. A true threat is a statement in which "the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black,* 538 U.S. at 359.

A true threat does not require that the speaker intend to carry it out.  *Id*. at 359-60.  This is so, because a prohibition on true threats "protect[s] individuals from the fear of violence" and "from the disruption that fear engenders," in addition to protecting people "from the possibility that the threatened violence will occur."  *Id*. at 360 (quoting *R.A.V.*, 505 U.S. at 388).  Importantly, "[i]ntimidation . . . is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death."  *Id*.

The Defendant's principal argument, both here and in the district court, was that his posts were conditioned on events unlikely to occur, and therefore, they

were not true threats. *See* Def. Brief at 36, 40.[6] But the law is clear that "a statement may constitute a true threat even if it is conditional." *United States v. Dillard*, 795 F.3d 1191, 1200 (10th Cir. 2015); *see also United States v. Castillo*, 564 F. App'x 500, 501 (11th Cir. 2014) (affirming conviction under 18 U.S.C § 871(a) where the defendant responded to a picture posted on Facebook about the President, with "[T]hat's the last straw. If he gets re-elected, I'm going to hunt him down and kill him and watch the life disappear from his eyes."); *United States v. Callahan*, 702 F.2d 964, 965 (11th Cir. 1983) (finding letter offering to kill the President on Inauguration Day if Secret Service could make arrangements to get the defendant "into the act" was a true threat); *United States v. Kosma*, 951 F.2d 549, 554 n.8 (3d Cir. 1991) (holding that conditional threat including if the President went to Philadelphia he would be killed was a true threat); *United States v. Howell*, 719 F.2d 1258, 1260 (5th Cir. 1983) (hospital patient's statement that he would kill the President if released was a true threat).

The Defendant's own words make clear that his threats were not conditional. *See, e.g.*, Gov. Ex. 1B ("We will fight back . . . We will circle the state Capitol and

---

[6] As a corollary argument, the Defendant suggests this case presents an "unusual set of facts," and therefore, it should not have been resolved by a jury. Def. Brief at 33. It is bedrock constitutional law that the Sixth Amendment affords criminal defendants a trial by jury. *See Ramos v. Louisiana*, 140 S. Ct. 1390, 1397 (2020). That constitutional command, however, is waivable. *See Brady v. United States*, 397 U.S. 742, 748 (1970). To that end, the Defendant could have requested a bench trial pursuant Federal Rule of Criminal Procedure 23. The record reveals no such request.

let them fight the cops and take the building. Then we will encircle them and trap them inside . . . DO NOT RSVP TO THIS EVENT! JUST SHOW UP. WE ARE CHAOTIC MALESTROM OF WILLING HANDS . . . If you are afraid to die fighting the enemy, then stay in bed and live."); Gov. Ex. 2A-2B ("We WILL protect capitol RESIDENTS and CIVILIANS from armed racist mobs WITH EVERY CALIBER AVAILABLE.  This is an armed coup and can only be stopped by an armed community! If you're afraid to die fighting the enemy, stay in bed and live.").   Tellingly, the word "if" appears only once in each of the charged communications.  *See* Gov. Ex. 1B ("If you are afraid to die fighting the enemy, then stay in bed and live."); Gov. Ex. 2B ("If you're afraid to die fighting the enemy, stay in bed and live.").

The Defendant submits that his communications could not reasonably be construed as true threats because the "armed racists" he described in his posts were a "group that seems not to have existed." Def. Brief at 31.[7] But whether the individuals—armed or unarmed—he mentioned in his posts existed, or, for that matter, would be at the Florida Capitol on Inauguration Day, does not alter his intent to communicate true threats or his knowledge that they would be viewed as true threats.  *See* ECF No. 72 at 5 (jury instructions outlining elements of 18

---

[7]  To put the Defendant's posts into proper context, less than a week prior to his creation of the "Defend Tallahassee" event, which comprised Count One of the Indictment, the United States Capitol was attacked.

U.S.C. § 875(c)). To begin with, his communications were not conditioned on "armed racists" being at the Florida Capitol; nor could they reasonably be construed that way. They were true threats, because given the totality of the circumstances, they could be interpreted as serious expressions of an intent to commit an act of unlawful violence to a particular individual or group of individuals—indeed, a jury viewed them as much. Even if the Defendant's references to "armed racists" were fanciful ideas, a reasonable person could still view the posts as calls to violence because of the context surrounding his words, actions, and the manner he publicly portrayed himself. *See, e.g.*, *United States v. Wheeler*, 776 F.3d 736, 744 (10th Cir. 2015) ("Especially where, as here, a reasonable person might believe the individuals ordered to take violent action are subject to the will of the threatening party, such exhortations may amount to true threats.").

Finally, the Defendant suggests his posts were "borne out of the politics of the day and were distinctly political." Def. Brief at 30-31. True, "[p]olitical speech, of course, is at the core of what the First Amendment is designed to protect." *Morse v. Frederick*, 551 U.S. 393, 403 (2007) (cleaned up). The charged communications were distinctly apolitical in that they did not mention political candidates or parties, or for that matter, did not reference a political election. Assuming, for the sake of argument, that the charged communications

27

contained a hint of political speech; the mere fact that threats and political speech were comingled does not insulate the Defendant from criminal culpability. *See, e.g.*, *United States v. Stevens*, 881 F.3d 1249, 1256 (10th Cir. 2018) (noting that a threat accompanied by "pure political speech . . . does not shield a defendant from culpability) (citation omitted).[8]

Accordingly, the Defendant's speech should not be afforded any First Amendment protection because they were true threats.

### 3. *Sufficiency of the Evidence*

At its core, the Defendant's argument is one of sufficiency of the evidence. That is, the Defendant posits, that the Government failed to introduce sufficient evidence from which a reasonable jury could objectively find that his charged social media posts were true threats. In determining if there was sufficient evidence to support a jury's verdict, this Court views the evidence in the light most favorable to the Government and draws all reasonable inferences and credibility

---

[8]    Amici posit that the Defendant's speech is protected because it related to a matter of public concern. Amici Brief at 19. While American elections are certainly matters of public concern that are afforded wide latitude for robust discourse, planning, inciting, and summoning others to join a violent attack on a state capitol, where others with different views would arguably be present, is a purely private matter. The Defendant's Facebook posts did not "attempt to engage in a dialogue" concerning political issues or provide "relevant information" concerning the same. *Fleury*, 20 F.4th at 1364. Accordingly, his speech was not on a matter of public concern.

28

choices in the Government's favor. *United States v. Man*, 891 F.3d 1253, 1264 (11th Cir. 2018); *Maxwell*, 579 F.3d at 1299.

This Court reviews *de novo* the denial of a motion for judgment of acquittal on sufficiency of the evidence grounds. *United States v. Browne*, 505 F.3d 1229, 1253 (11th Cir. 2007). "The verdict must stand if there is substantial evidence to support it, that is unless no trier of fact could have found guilt beyond a reasonable doubt." *United States v. Calderon*, 127 F.3d 1314, 1324 (11th Cir. 1997) (internal quotation omitted); *accord Maxwell*, 579 F.3d at 1299.

Even under the preserved error standard, applicable when a motion for judgment of acquittal is renewed at the close of all the evidence, "[t]he question is whether reasonable minds *could* have found guilt beyond a reasonable doubt, not whether reasonable minds *must* have found guilt beyond a reasonable doubt. *United States v. Bacon*, 598 F.3d 772, 775 (11th Cir. 2010) (*per curiam*); *accord United States v. Flores*, 572 F.3d 1254, 1264 (11th Cir. 2009) (*per curiam*). "A jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Watts*, 896 F.3d 1245, 1251 (11th Cir. 2018) (internal quotations omitted). "Because a jury is free to choose among the reasonable constructions of the evidence, it is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every

29

conclusion except that of guilt." *United States v. Godwin*, 765 F.3d 1306, 1320 (11th Cir. 2014) (internal quotation omitted); *accord Maxwell*, 579 F.3d at 1299.

"[I]t is well established that credibility determinations are the exclusive province of the jury." *Calderon*, 127 F.3d at 1325 (internal quotation omitted). This Court has also held that it is "bound by the jury's credibility choices, and by its rejection of the inferences raised by the defendant." *United States v. Peters*, 403 F.3d 1263, 1268 (11th Cir. 2005).

Furthermore, the Defendant's insufficiency of the evidence claim is to be reviewed considering all the evidence presented in the case, including his own testimony. *United States v. Hough*, 803 F.3d 1181, 1188 (11th Cir. 2015); *United States v. Brown*, 53 F.3d 312, 314, n.4 (11th Cir. 1995). "[A] statement by the defendant, if disbelieved by the jury, may be considered as *substantive evidence* of the defendant's guilt." *Brown*, 53 F.3d at 314 (emphasis in original); *accord United States v. Ellisor*, 522 F.3d 1255, 1272 (11th Cir. 2008) ("Ellisor took the stand and testified that he never intended to defraud anyone. The jury was free to disbelieve Ellisor's statements and to take them as substantive evidence to the contrary."). That is,

> where some corroborative evidence of guilt exists . . . and the defendant takes the stand in his own defense, the defendant's testimony denying guilt, may establish, by itself, elements of the offense . . . The rule applies with special force when the elements to be proved for a conviction include highly subjective elements: for example, the defendant's intent or knowledge.

*United States v. Williams*, 390 F.3d 1319, 1326 (11th Cir. 2004) (quoting *Brown*, 53 F.3d at 314-15).  In sum, "the jury, hearing [the defendant's] words and seeing [his] demeanor, [is] entitled to disbelieve [his] testimony, and, in fact, to believe the opposite of what [he] said."  *United States v. Turner*, 474 F.3d 1265, 1280 (11th Cir. 2007) (quoting *Brown*, 53 F.3d at 314).

Viewing the evidence in the light most favorable to the Government, the evidence was sufficient for a jury to find guilt on both counts.  The Government presented a chronology of social media posts illustrating an escalation in their violent tenor, which climaxed in mid-January 2021, mere days before the Inauguration.  For instance, the jury saw that the Defendant publicly described his employment on Facebook as a "Squad Designated Sharpshooter."  Gov. Ex. 9A.  The Government also introduced photographs of him holding, or posing near, a rocket launcher, Gov. Ex. 10; sniper rifle, Gov. Ex. 11; and a shotgun and handgun, Gov. Ex. 17.  The jury also saw the Defendant, seemingly meditating, with an AK-47 leaned up against the wall behind him, Gov. Ex. 7; and juggling grenades, Gov. Ex. 8.

This was not a case of an individual, with no tactical training, concealing himself behind the veil of the internet while making haphazard threats.  The jury heard the Defendant had combat training and experience, both with the United States military and abroad, Gov. Ex. 3, 12B; that he inquired on Facebook about

31

purchasing "an ak or a pistol," Gov. Ex. 28, and about assaulting law enforcement at a protest, Gov. Ex. 22.  He also promoted violence on his YouTube channel by, for example, stating: "I'm coming back to Syria and I'm going to shoot any Jihadis and Turks that get in our way," while he was firing an AK-47 style weapon at a gun range in Orlando.  Gov. Ex. 16; ECF No. 116 – p.164:6-10.  Finally, the jury saw the firearms and ammunition seized from the Defendant's residence, an AK-47 style rifle he purchased two days before his first charged post, and statements he made to law enforcement about armed combat, enjoying the "thrill of the kill," radicalizing other prisoners, not wanting to be captured alive, and, specific to his social media posts: that his intent was to scare people.  ECF No. 115 – pp.87:14-22; 123:10-12; 129:11-12; Gov. Ex. 31, 35.  Accordingly, the district court did not err in denying the motion for judgment of acquittal on sufficiency of the evidence grounds as the evidence was ample to sustain a conviction on both counts.

In sum, this Court should affirm the district court because the Defendant's First Amendment argument was not properly preserved; and even if it was, his speech is outside the First Amendment's ambit.  Moreover, when viewing the evidence in the light most favorable to the Government, there was sufficient evidence from which a jury could find that his charged communications were true threats.

## ISSUE II

## THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN EXCLUDING IRRELEVANT EVIDENCE OF OTHER THREATS TO THE FLORIDA CAPITOL.

Standing on the Sixth Amendment, the Defendant argues the district court erred in excluding the testimony of Leon County Sheriff Walt McNeil and Tallahassee Police Department ("TPD") Chief Lawrence Revell, who, the Defendant submits, would have testified there was "no threat to the capitol." Def. Brief at 36. To violate the right to compulsory process, the testimony must be "*relevant* and *material*, and . . . *vital* to the defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) (cleaned up). Because the proffered testimony was irrelevant, immaterial, and not vital to the defense, the district court did not abuse its discretion in excluding it.

On April 15, 2021, the Defendant moved the district court to compel the Government to provide the Federal Bureau of Investigation's ("FBI") intelligence assessment relating to threats to the Florida Capitol on January 20, 2021. ECF No. 42. Simultaneously, the Defendant subpoenaed Sheriff McNeil and Chief Revell for trial testimony. The Government moved to quash the subpoenas and opposed the motion to compel. ECF No. 45. On April 23, 2021, the district court held a hearing where it recognized the threat assessment the Defendant sought was not

public, and therefore, would not be relevant, because a reasonable person would not have known about its existence when they perceived the threats. ECF No. 112 – pp.4:16-5:1. On that basis, the district court denied the motion to compel.  ECF No. 112 – p.13:4-21.

Thereafter, the district court heard argument on the Government's motion to prohibit the defense from calling Sheriff McNeil and Chief Revell to testify about what law enforcement communicated to the public around the time of the Inauguration.  The district court ultimately granted the Government's request. ECF No. 112 – pp.21:25-22:6.  Several days later, at another pretrial hearing, the district court clarified its prior ruling on the issue of the testimony of Sheriff McNeil and Chief Revell, holding that, to the extent the Defendant was seeking to present a law enforcement witness to testify about what they told the public relating to Inauguration day threats, he could:

> THE COURT: Well, and what we did before the ruling was that we were treating it as a motion in limine to exclude evidence of the type that was the subject of your motion to compel, about what they were doing or what they thought was going to happen, those confidential assessments and things like that. If you are talking about public communications, I think that's something different.

> MR. MURRELL: I understand. But, again, as the Court said, part of what I want to present is what the law enforcement was disseminating to the public.

> THE COURT: Well, that would be the only part that I think wouldn't have been excluded by the other ruling.

34

MR. MURRELL: Yes. Given your ruling, yes, sir, I agree. But, again, that was one of the reasons that I sent the subpoena was to talk about what information they had disseminated to the public.

THE COURT: Okay. Well, I'll clarify the ruling. And I should have made this clear before. I found the government didn't really have standing to quash the subpoenas, but that the testimony as I interpreted it at the time that you were seeking would be excluded and that would sort of resolve the issue. But if you're seeking other testimony, other than what was the subject of the motion to compel, and other than what was excluded by the previous ruling, that is, things that was other than what was publicly disseminated, that won't be allowed. But if you subpoenaed them for other reasons and that can be addressed, I mean, if someone move to quash them on that basis or the basis that the government was asserting burden and things like that we can address that between now and then.

MR. MURRELL: So should I tell the witnesses that the subpoenas are still legit?

THE COURT: You may, yes.

MR. MURRELL: Okay. Thank you, Judge.

ECF No. 113 – pp.49:2-50:9.[9]  Later that same hearing, while addressing defense

exhibits, the district court clarified its earlier ruling regarding the motion, again:

THE COURT: Well, that does relate to sort of what we talked about before about the subpoenas. And I did go back and look at that article on this break here. And the article is quoting officials saying the things that I assume

---

[9]  Although not part of the record, given the district court's reconsideration of its prior ruling on the issue, shortly after the April 28, 2021, hearing, the Government facilitated a phone call between defense counsel and a deputy chief of the TPD, wherein the parties discussed the substance underlying the reason for the defense subpoena.

you wanted them to say when you subpoenaed them. There it would be for the truth of the matter. So I think to the extent we still have the subpoena issue outstanding, I just want to be clear to you that if any of it would be permitted it would be did you say this. Not, is this true. Not, did you really -- the statements in there are we're not aware of any specific threats and things like that. And that's what I've ruled you wouldn't be able to get into, whether they assessed that or not.

If the question is well, what did the public know, what would a reasonable person have -- what's the context of which a reasonable person would have viewed all this, unless the question to those witnesses are did you, did you put out any other public statements beyond what's captured here. Because really whether they even said those things wouldn't be relevant to the point that you're trying to make. It was in the newspaper. Whether he said or not, even if someone comes in and says, oh, I was misquoted, I never said that. If your point is, well, what the public was told is what's relevant.

MR. MURRELL: I don't know whether there were other public announcements. And I understand the ruling. I think the Court understands I think it should be admissible for the truth of the matter asserted.

THE COURT: No, I understand.

MR. MURRELL: But you ruled against me on that so I would only introduce the testimony, ask the question well, what information did you disseminate about known threats to the capitol.

ECF No. 113 – pp.84:6-85:11.

The first day of trial, defense counsel noted that it was unlikely Sheriff McNeil or Chief Revell would be called as witnesses if the district court admitted newspaper articles he was seeking to admit in evidence. ECF No. 115 – p.5:1-3.

36

Over the Government's objection, the district court admitted Defense Exhibit 1, an article from the Tallahassee Democrat published on January 13, 2021, that, in part, quoted Chief Revell as stating that there were no specific threats against Florida's Capitol, Def. Ex. 1, and Defense Exhibit 2, an article from the Tampa Bay Times that, in sum and substance, was much of the same public message as Defense Exhibit 1, Def. Ex. 2; ECF No. 115 – pp.155:2-162:17. The jury was instructed that Defense Exhibits 1 and 2 were not to be considered for the truth of what was said in the articles, but rather, to show "what information was conveyed to the public at the time the articles were published." ECF No. 116 – p.67:2-17. Ultimately, neither Sheriff McNeil, nor Chief Revell were called as witnesses.

From this, the Government gleaned there were two categories of evidence the Defendant sought to admit relating to threats at the Florida Capitol: (1) what law enforcement publicly conveyed and (2) the non-public "intelligence" assessment law enforcement maintained (*i.e.*, law enforcement's internal work-product). In admitting the newspaper articles, the district court admitted evidence of what law enforcement conveyed to the public, *see* Def. Ex. 1-2, such that the Defendant made the strategic decision not to call Sheriff McNeil or Chief Revell. The only evidence the district court excluded was law enforcement's "intelligence" assessment concerning what threats—other than the Defendant's—law enforcement was aware of around the time of the Inauguration. The district court

ruled that such evidence was not relevant because "it would not make it more or less likely that a reasonable person who wouldn't have access to that would view that as a true threat." ECF No. 112 – p.13:18-21.

The district court did not abuse its discretion because the "intelligence" assessment sought was not relevant to the ultimate issues before the jury: whether (1) the Defendant knowingly sent a message in interstate commerce containing a true threat to kidnap or injure the person of another and (2) that the Defendant sent the message with the intent to communicate a true threat or with knowledge that it would be viewed as a true threat. "A trial court has broad discretion in determining the admissibility of evidence; its ruling will not be disturbed on appeal absent an abuse of discretion." *United States v. Zapata*, 139 F.3d 1355, 1357 (11th Cir. 1998) (*per curiam*). "[E]videntiary rulings will be overturned only if the moving party establishes that the ruling resulted in a substantial prejudicial effect." *Piamba Cortes v. Am. Airlines, Inc.*, 177 F.3d 1272, 1305 (11th Cir. 1999) (cleaned up).

The Government did not have to prove how many, if any, *other* threats existed at the time the Defendant transmitted his communications on Facebook, including whether "armed racists" were planning an attack on the Florida Capitol. As far as the Government was aware, the Defendant was not privy to law enforcement's "intelligence" assessment when he posted his threatening

38

communications—indeed, the public surely was not—which is why the district court excluded it as irrelevant.  ECF No. 112 – p.12:21-25.  At bottom, even assuming, for the sake of argument, law enforcement was unaware of any *other* threat to the Florida Capitol on Inauguration Day, it would not in any way affect the Defendant's intent to communicate his messages or the manner a reasonable person would perceive them.

While the Defendant attempts to cast his statements regarding "armed racists" as directed toward a "non-existent group of individuals," Def. Brief at 42, the reality is, whether armed racists were planning to attack the Florida Capitol on Inauguration Day was not a condition of his threats, and therefore, was not relevant.  Because the threats were unconditional, the jury could reasonably infer that his threats were directed at *anyone* who viewed them, including, but not limited to law enforcement officers, armed racists, or even peaceful protestors whose speech may have been chilled as a result.

The crimes were consummated when the Defendant "posted" each of the charged communications.  This is so, because "[t]he government is not required to prove an actual intent to carry out the threat."  *United States v. Pilkington*, 583 F.2d 746 (5th Cir. 1978).[10]  Following the Defendant's argument to its logical

---

[10]  In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

conclusion would result in an unmanageable situation where law enforcement would have to wait and see whether any of the conditions—or in this case, statements—in a threat, came to fruition before lawfully being able to mitigate the threat. For good reason, well-settled law says otherwise. *See, e.g.*, *Callahan,* 702 F.2d at 965 (affirming where the Government did not wait until Inauguration Day to see if the defendant attempted to kill the President); *Kosma*, 951 F.2d at 554 (affirming where the Government did not wait for the President to be brought to Philadelphia so that the defendant could kill him); *Howell,* 719 F.2d at 1260 (affirming where the Government did not wait for hospital patient to be released to see if he would kill the President).

The law does not even require that the threat be communicated directly to the purported victim. *See, e.g.*, *United States v. Khan*, 937 F.3d 1042, 1051 (7th Cir. 2019) (finding the defendant's public Facebook posts were true threats where the threats were not directed at a particular person); *Castillo*, 564 F. App'x at 501 (finding the defendant's public Facebook post wherein he threatened the President was a true threat); *United States v. Stock*, 728 F.3d 287, 290 (3d Cir. 2013) (finding that advertisement posted on Craigslist was a true threat). District courts are afforded wide latitude to exclude evidence in accord with the Federal Rules of Evidence. *See, e.g.*, *United States v. Estrada*, 969 F.3d 1245, 1272 (11th Cir. 2020); *United States v. Kendrick*, 682 F.3d 974, 986 (11th Cir. 2012). And the

district court's "role as a gatekeeper [] to ensure that the factfinder bases its decision only on relevant and reliable information," cannot be overstated. *Mitrovic*, 890 F.3d at 1222.  Because law enforcement's "intelligence" assessment was not "relevant . . . material [or] vital to the defense," *Valenzuela-Bernal*, 458 U.S. at 867, the district court did not abuse its discretion in excluding it.

Assuming, *arguendo*, the district court erred in excluding non-public law enforcement intelligence related to *other* threats, the error was harmless.[11]  Under the constitutional harmless-error standard, a district court should be affirmed if this Court is able to "say that the error is harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).  Factors to be considered include the importance of the evidence, whether it was cumulative, and the overall strength of the government's case.  *See Van Arsdall*, 475 U.S. at 684.  The exclusion of four types of evidence may, in some circumstances, violate the Compulsory Process and Due Process Clauses:

> (1) evidence "directly pertaining to any of the actual elements of the charged offense or an affirmative defense"; (2) evidence "pertaining to collateral matters that, through a reasonable chain of inferences, could make the existence of one or more of the elements of the charged offense or an affirmative defense more or less certain"; (3) evidence that "is not itself tied to any of the elements of a crime or affirmative defense, but that could have a substantial impact on the credibility of an

---

[11]    In an abundance of caution, the Government will address both constitutional and evidentiary harmless error.

important government witness"; and (4) evidence that, "while not directly or indirectly relevant to any of the elements of the charged events, nevertheless tends to place the story presented by the prosecution in a significantly different light, such that a reasonable jury might receive it differently.

*United States v. Jeri*, 869 F.3d 1247, 1260 (11th Cir. 2017) (quoting *United States v. Hurn*, 368 F.3d 1359, 1363 (11th Cir. 2004)).

As to evidentiary harmless error, "[a]n error is harmless unless there is a reasonable likelihood that it affected the defendant's substantial rights." *United States v. Langford*, 647 F.3d 1309, 1323 (11th Cir. 2011) (internal quotation omitted); *accord United States v. Mendez*, 117 F.3d 480, 486 (11th Cir. 1997). Where "an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted." *Mendez*, 117 F.3d at 486 (internal quotation omitted). Where the evidence against the defendant was overwhelming or ample, an evidentiary error is likely to be harmless. *See United States v. Green*, 873 F.3d 846, 867-68 (11th Cir. 2017); *Mendez*, 117 F.3d at 486.

Here, law enforcement testimony that there were no *other* threats to the Florida Capitol does not fit into any of the *Hurn* categories, nor would it have substantially influenced the outcome. Such evidence would not have changed the overwhelming evidence of the Defendant's dangerousness; and it would not have altered the critical question before the jury: whether (1) the Defendant knowingly

sent a message in interstate commerce containing a true threat to kidnap or injure the person of another and (2) that the Defendant sent the message with the intent to communicate a true threat or with knowledge that it would be viewed as a true threat. *See* ECF No. 72 at 5. Thus, any error—constitutional or evidentiary—the district court committed by excluding the "intelligence" assessment, was harmless.

## ISSUE III

**THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN EXCLUDING EXPERT TESTIMONY REGARDING THE ROLE OF THE PEOPLE'S PROTECTION UNITS ("YPG") BECAUSE THE TESTIMONY WAS NOT RELEVANT AND WOULD CONFUSE THE JURY.**

The district court did not err in excluding the testimony of David Phillips, a purported expert on the YPG, because the testimony was irrelevant and would confuse the jury.[12] Whether friend or foe, the YPG's relationship with the United States was not an issue for the jury to decide and the district court recognized that in excluding the testimony under Rules 401 and 403.[13] *See* ECF No. 115 –

---

[12] In the district court, the Defendant raised a due process challenge as it relates to Issue II. *See* ECF No. 42 at 4 (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). As to Issue III, he failed to file a written response to the Government's motion to exclude David Phillips, *see* ECF No. 43, and similarly failed to raise a constitutional issue to the Government's motion in open court. ECF No. 112 – p.23:15-24. Accordingly, the Court should review for plain error; although the Court need not do so, because no error occurred.

[13] If the Defendant were charged with, for example, providing material support to a foreign terrorist organization pursuant to Title 18, United States Code, Section

pp.154:18-155:1. The Government offered the YPG evidence for one reason: to establish the Defendant's training, experience, and proficiency with military tactics and weapons, including the AK-47, which was featured prominently in his Call to Arms and social media posts. *See generally* ECF No. 35 at 17-21; ECF No. 112 – p.33:11-13.

The thrust of the Defendant's argument is that the YPG was featured so heavily in the Government's case, that the jury must have disregarded its oath and convicted him solely on the basis that he traveled to the Middle East to fight with a foreign militia. There are two flaws in that argument. First, "[w]e presume that jurors follow the instructions given by the district court," *United States v. Almanzar*, 634 F.3d 1214, 1222 (11th Cir. 2011), and there is no evidence in this record to suggest the jury did not do so. And second, the Government conceded it would not elicit testimony or seek to admit evidence relating to the YPG's alignment with nations or foreign terrorist organizations, unless the defense opened the door. ECF No. 112 – pp.33:2-34:18; ECF No. 43 at 14-15.

Indeed, none of what the Government presented at trial came close to insinuating the YPG was—or was affiliated with—a foreign terrorist organization. The bulk of the evidence relating to ISIS and the YPG was admitted through the Defendant's own testimony. *See, e.g.*, ECF No. 116 – pp.104:1-7; 104:21-24;

---

2339B, the Government would concede that the expert testimony would have been relevant. No such charges were brought in this case.

105:5-16.    Although the Defendant was loquacious at times, as it related to irrelevant geopolitical issues in Syria or how ISIS operated, *see* Def. Brief at 57; ECF No. 116 – pp.103:20-105:10, on cross-examination, the Government did not suggest, intimate, or even question him about the YPG's association with terrorist organizations.

The suggestion that the Government—seemingly deviously—failed to admit evidence of the Defendant's time with the U.S. Army is similarly misguided. *See* Def. Brief at 62.    The Defendant served in the Army for approximately twenty months before being other-than-honorably discharged for deserting his platoon while awaiting deployment to Iraq.    The district court ruled the reason for the discharge was not relevant, ECF No. 113 – p.54:10-12, but more importantly, the Defendant did not boast on social media about his time with the Army like he did with the YPG.    Thus, the universe of evidence the Government could use, as it related to the Army, was limited.

Much is made by the Defendant about the photographs the Government introduced related to his time with the YPG. *See* Def. Brief at 56.    But the photographs, all of which have a nexus to violence, were introduced to show the Defendant's knowledge and proficiency with weapons, tactics, war, and anarchy, which, the Government argued to the jury, was precisely what the Defendant was seeking when he transmitted his Call to Arms. *See* ECF No. 116 – p.221:7-16.

The purported expert's testimony would not have altered, in any way, the reason for the evidence related to the YPG: that the Defendant traveled halfway around the world to train and fight with a militia. As the district court noted, "the weapons training that he received in the YPG is relevant. The willingness to travel abroad and fight for what he believes in, risk death, all that thing [sic] I think is relevant to the subjective intent here." ECF No. 113 – p.82:18-24. This Court routinely affirms district courts' exclusions of defense experts where the proposed testimony is irrelevant. *See, e.g.*, *United States v. Gillis*, 938 F.3d 1181, 1195 (11th Cir. 2019) (finding no abuse of discretion where district court excluded testimony of defense experts); *United States v. Bowe*, 221 F.3d 1183, 1194 (11th Cir. 2000) (same). This case is no different. Accordingly, the district court should be affirmed.

Assuming, *arguendo*, the district court erred in excluding the purported expert's testimony, the error was harmless.[14] Under the constitutional harmless error standard, any "error [wa]s harmless beyond a reasonable doubt," because the jury was apprised of other non-YPG-related evidence. *Van Arsdall*, 475 U.S. at 684. Any evidentiary error was similarly harmless because there is no "reasonable likelihood that it affected the defendant's substantial rights." *Langford*, 647 F.3d at 1323.

---

[14]   Again, in an abundance of caution, the Government will address both constitutional and evidentiary harmless error.

The Government introduced the firearms and ammunition seized from the Defendant's residence, an AK-47 style rifle he purchased two days before his first charged post, and statements he made to law enforcement about armed combat, enjoying the "thrill of the kill," radicalizing other prisoners, not wanting to be captured alive, and, specific to his social media posts: that his intent was to scare people.  ECF No. 115 – pp.87:14-22; 123:10-12; 129:11-12; Gov. Ex. 35-36.  All this other evidence provides ample support for the jury's conclusion that the charged communications were true threats.  Thus, any error—constitutional or evidentiary—the district court committed by excluding the testimony, was harmless.

## **CONCLUSION**

For the foregoing reasons, the Court should affirm the judgment of the district court.

Respectfully submitted,

JASON R. COODY
United States Attorney

*/s/ Lazaro P. Fields*
LAZARO P. FIELDS
Assistant United States Attorney
Northern District of Florida
Florida Bar No. 1004725
111 North Adams Street, 4th Floor
Tallahassee, FL  32301
(850) 942-8430
Lazaro.Fields@usdoj.gov

47

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(a)(7)

I HEREBY CERTIFY that this brief complies with the type-volume limitation set forth in F.R.A.P. 32(a)(7). This brief contains <u>11,539</u> words.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been mailed and transmitted by electronic filing to the below listed attorney(s) this <u>2nd</u> day of March 2022.

Randolph P. Murrell
Federal Public Defender
Northern District of Florida
227 N. Bronough Street, Suite 4200
Tallahassee, Florida 32301

Counsel for Defendant-Appellant

<u>/s/ Lazaro P. Fields</u>
LAZARO P. FIELDS
Assistant United States Attorney
