No. 21-13749

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DANIEL BAKER,

*Defendant-Appellant.*

_____

A Direct Appeal of a Criminal Case
From the United States District Court
for the Northern District of Florida, Tallahassee Division

_____

**REPLY BRIEF OF APPELLANT**

**RANDOLPH P. MURRELL**
Federal Public Defender
Florida Bar No. 220265
227 N. Bronough Street
Suite 4200
Tallahassee, Florida 32301
Telephone: (850) 942-8818
FAX: (850) 942-8809
Attorney for Appellant

No. 21-13749

United States v. Daniel Baker

**CERTIFICATE OF INTERESTED PERSONS**

Pursuant to 11th Cir. R 26.1-1, 26.1-2, and 26.1-3, counsel for Appellant relies on the certificate previously filed in this case.

C 1 of 1

# TABLE OF CONTENTS

<u>Contents</u>                                                              <u>Page</u>

PRELIMINARY STATEMENT.................................................................i

REPLY ARGUMENT ................................................................ 1

## ISSUE I

Because Baker's social media posts were constitutionally protected speech, the trial court erred in denying his motion for a judgment of acquittal.................................................................... 1

## ISSUE II

The trial court violated Baker's fundamental due process right to present witnesses in his own defense when it excluded the testimony of law enforcement officers tending to show there was no group planning to attack Florida's Capitol.......................... 16

## ISSUE III

The trial court violated Baker's fundamental due process right to present witnesses in his own defense when it excluded David Phillips's testimony regarding the nature and history of the People's Protection Units. .................................................... 21

CONCLUSION ...................................................................... 27

CERTIFICATE OF COMPLIANCE........................................... 28

CERTIFICATE OF SERVICE.................................................. 29

i

# TABLE OF CITATIONS

<u>Cases</u>                                                          <u>Page</u>

Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002) ......................... 12

Bose Corp. v. Consumers Union of the United States, Inc.,
    466  U.S. 485 (1984) .................................................................. 2, 9, 10

Bourtzakis v. United States Attorney General, 940 F.3d 616 (11th Cir.
2019) ................................................................................................. 2, 4

Brandenburg v. Ohio, 395 U.S. 444 (1969) ............................... 3, 7, 11, 17

Chaplinsky v. New Hampshire, 315 U.S. 568 (1942) ............................ 10

Chapman v. California, 386 U.S. 18 (1967) ............................................ 20

Dennis v. United States, 341 U.S. 494 (1951) ....................................... 11

Dewey v. Des Moines, 173 U.S. 193 (1899) ............................................... 5

Don's Porta Signs, Inc. v. City of Clearwater, 829 F.2d 1051
    (11th Cir. 1987) ...................................................................................... 9

Edwards v. South Carolina, 372 U.S. 229 (1963) .................................. 10

In Illinois v. Gates, 462 U.S. 213 (1983) .................................................. 5

McMullen v. Carson, 754 F.2d 936 (11th Cir. 1985) ............................... 2

NAACP v. Claiborne Hardware Co., 458 U.S. 886 (1982) ................ 12,15

New York Times Co. v. Sullivan, 376 U.S. 254 (1964) ............................ 9

Noto v. United States, 367 U.S. 290 (1961) ............................................. 11

Puckett v. United States, 556 U.S. 129 (2009) ......................................... 7

R.A.V. v. City of St. Paul, Minn., 505 U.S. 377 (1992) ........................... 14

United States v. Brown, 53 F.3d 312 (11th Cir. 1995) ........................... 16

United States v. Cox, 957 F.2d 264, 265 (6th Cir. 1992) ........................ 12

United States v. Dierks, 978 F.3d 585 (8th Cir. 2020) ........................... 12

United States v. Green, 996 F.3d 176 (4th Cir. 2021) ........................... 5,7

United States v. Hesser, 800 F.3d 1310 (11th Cir. 2015) ........................ 7

United States v. Hough, 803 F.3d 1181 (11th Cir. 2015) ........................ 16

United States v. Hurn, 368 F.3d 1359 (11th Cir. 2004) ......................... 24

United States v. Jeri, 869 F.3d 1247 (11th Cir. 2017) ........................... 20

United States v. Kelner, 534 F.2d 1020 (2d Cir. 1976) ............................ 3

United States v. Mitchell, 146 F.3d 1338, (11th Cir. 1998) .................... 9

United States v. Olano, 507 U.S. 725 (1993) ............................................ 8

United States v. Peaden, 727 F.2d 1493 (11th Cir. 1984) ............... 18, 26

United States v. Pon, 963 F.3d 1207 (11th Cir. 2020)............................ 20

United States v. Ruan, 966 F.3d 1101 (11th Cir. 2020),
    cert. granted, 142  S. Ct. 457 (2021) .................................................. 18

United States v. Sosa, 782 F.3d 630 (11th Cir. 2015) ..............................7

United States v. Sutcliffe, 505 F.3d 944 (9th Cir. 2007) ........................13

United States v. Vandergrift, 754 F.3d 1303 (11th Cir. 2014)................8

United States v. Wheeler, 776 F.3d 736 (10th Cir. 2015) ............... 13, 25

Virginia v. Black, 538 U.S. 343 (2003)........................................... 4, 14,17

Walker v. Kane, 885 F.3d 535 (8th Cir. 2018).......................................25

Whitney v. California, 274 U.S. 357 (1927) ...........................................8

Yates v. United States, 354 U.S. 298 (1957)........................................11

Yee v. City of Escondido, 503 U.S. 519 (1992) ........................................5

## Statutes

18 U.S.C. § 875(c) .................................................................. 12, 17

## Other Authorities

Rule 52(a) of the Federal Rules of Civil Procedure ..................................9

Rule 103 of the Federal Rules of Evidence ...........................................25

## PRELIMINARY STATEMENT

All references to pages in the Initial Brief shall be IB at the ECF page number, e.g., (IB at ECF-1) and references to the government's Answer Brief shall be AB at the ECF page number, e.g., (AB at ECF-1). Citations to the record shall be made in the same manner as in the Initial Brief. All arguments made in the Initial Brief are adopted and realleged here. Only statements Appellant deems to require a response are addressed in the text below.

# REPLY ARGUMENT

## ISSUE I

>Because Baker's social media posts were
>constitutionally protected speech, the trial court
>erred in denying his motion for a judgment of
>acquittal.

The crux of Baker's appeal is that his two posts cannot be true threats because they were conditioned upon an unlikely event—an attack on Florida's Capitol—and aimed at a group that didn't exist. The government contends those circumstances are irrelevant.

Before reaching the merits, the government argues Baker's First Amendment claim should be reviewed only for plain error and that *Bose Corp. v. Consumers Union of the United States, Inc.,* 466 U.S. 485 (1984), is inapplicable.

Baker's First Amendment claim, however, was "squarely" before the Court, *see Bourtzakis v. United States Attorney General*, 940 F.3d 616, 621 (11th Cir. 2019), and *Bose* governs the standard of review in First Amendment cases, requiring an independent review of the entire record. S*ee McMullen v. Carson*, 754 F.2d 936, 938 (11th Cir. 1985) (recognizing the requirement of an independent examination of the entire record in First Amendment cases).

2

Defense counsel moved for a judgment of acquittal at the close of the government's case and renewed it following the defense case. As the government argues, counsel failed to mention the First Amendment. Counsel, however, did argue the government had failed to prove there was a true threat because the "threat" was "conditional," and "based on [an] unlikely series of events with a message communicated to a group that doesn't exist." ECF No. 116 at 40-41.

It was an argument first presented five days after Baker's arrest. Citing *United States v. Kelner,* 534 F.2d 1020, 1027 (2d Cir. 1976), defense counsel argued there wasn't probable cause "because the constitutionally-limited definition of the term 'threat' is meant to 'insure that only unequivocal, unconditional, and specific expressions of intention to immediately inflict injury may be punished.'" ECF 16 at 11. In a subsequent motion to compel, citing *Brandenburg v. Ohio,* 395 U.S. 444, 447 (1969) (*per curiam*), he argued "The guarantees of free speech 'do not permit a state to forbid or proscribe advocacy or the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action." ECF No. 42 at 2-3. He cited *Brandenburg*, again, in his response to the government's Motion to

Quash, arguing that the threat must be "imminent." ECF No. 47 at 3. At the April 23, 2021, hearing, defense counsel argued the threat had to be "imminent" and that "whether it was conditional," was a consideration, too, ECF No. 112 at 7; that "it wasn't conceivable this event would happen because there were no armed racists," *Id.* at 9; that he wanted the jury to know "there did not appear to be any armed group ready to invade the Capitol," *Id.* at 9; and that "if you can go to jail for threatening somebody that is fictitious I think you've really run afoul of the First Amendment," *Id.* at 20. Then, too, there's no dispute Baker preserved his claim he was entitled to a judgment of acquittal because the government had failed to prove a reasonable person would have viewed the posts as "a serious expression of an intention to commit unlawful physical violence." *Virginia v. Black*, 538 U.S. 343, 359 (2003).

In *Bourtzakis*, 940 F.3d at 621, where counsel had presented the "issue" and one argument to the trial court and added a second argument before this Court, the Court rejected the argument he had forfeited the second one, stating Bourtzakis "can now 'make any argument in support of' the position that his conviction is not an aggravated felony; he is 'not

limited to the precise arguments [he] made below.'"[1] (quoting Y*ee v. City of Escondido*, 503 U.S. 519, 534 (1992)). In *Illinois v. Gates*, 462 U.S. 213 (1983), the Court, addressing the question of whether a particular federal question was raised, said much the same, concluding that:

> "[if] the question were only an enlargement of the one mentioned in the assignment of errors, or if it were so connected with it in substance as to form but another ground or reason for alleging the invalidity of the [lower court's] judgment, we should have no hesitation in holding the assignment sufficient to permit the question to be now raised and argued."

*Id.* at 219-220 (quoting *Dewey v. Des Moines*, 173 U.S. 193, 197-198 (1899)).

In *United States v. Green*, 996 F.3d 176, 184 (4th Cir. 2021), the court distinguished between a claim and an argument: "because once a

---

[1] Bourtzakis had challenged a decision rejecting his application for naturalization based on his conviction of a State of Washington drug offense the Department of Homeland Security had deemed an aggravated felony. In the district court he argued the Washington offense was broader than the comparable federal act because (a) the latter had a narrower standard of accomplice liability and (b), unlike the Washington statute, it did not proscribe "administering." 940 F.3d at 620. Though Bourtzakis did not raise the first claim in the district court, this Court found it to be adequately preserved.

defendant raised a *claim* before the district court, it may make a new *argument* for that claim on appeal without triggering plain error review." (Emphasis in original).[2] Notably, the concurrence by Judge Rushing, in contending the claim had not been adequately preserved did so because the argument made in the district court and before the court of appeals "were two different arguments completely." 996 F.3d at 189 (Rushing, J. concurring). Here the *claim* made early in the case and the trial was the same, the government had failed to prove its case because the "threat" was based on a condition unlikely to occur and aimed at a group that didn't exist. Counsel failed to mention the First Amendment when moving for a judgment of acquittal, but the two arguments, as they were made throughout the case, are connected. Baker's posts were not "serious" for the same reason they were constitutionally protected speech.

---

[2] Green argued he should not have been sentenced as a career offender because one of the qualifying offenses, a Hobbs Act robbery, wasn't a "crime of violence." He had made a brief argument in the district court that "appeared to raise a vagueness challenge" to the career offender provision of the Sentencing Guidelines. *United States v. Green*, 996 F.3d at178 He did not raise the argument that " the elements of Hobbs Act robbery fail to match the definition of 'crime of violence,' in the Guidelines." 996 F.3d at 184.

In *Green*, the court concluded it made no difference whether the correct standard was *de novo* or plain error, as the defendant established there was plain error. The same is true here. Baker and Amici have explained at length why Baker's posts, conditioned on unlikely events and aimed at a non-existent group, are constitutionally protected speech. In a single sentence, the Court in *Brandenburg v. Ohio,* 395 U.S. at 447 said it clearly: "the constitutional guarantees of free speech do not permit a state to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action."

The "error" required in plain error review is "some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, *i.e.*, affirmatively waived. " *Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal authority and punctuation omitted); *see also United States v. Hesser,* 800 F.3d 1310, 1324 (11th Cir. 2015). To be "plain" the error "must be clear or obvious, rather than subject to reasonable dispute." *Puckett*, 556 U.S. at 135; *see also United States v. Sosa*, 782 F.3d 630, 637 (11th Cir. 2015). As far back as 1927, Justice Brandeis wrote the "suppression of free speech" required a showing that

the potential harm was "imminent" and "a serious one." *Whitney v. California*, 274 U.S. 357, 376 (1927) (Brandeis, J. concurring). Because the harm here was neither, there is a deviation from a legal rule, and it is not subject to reasonable dispute.

"[F]or an error to have affected substantial rights, it 'must have affected the outcome of the district court proceedings.'" *United States v. Vandergrift*, 754 F.3d 1303, 1312 (11th Cir. 2014), (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). If not for the error, Baker would have gone home rather than serve his 44-month prison sentence. *See e.g., United States v. Granados*, 168 F.3d 343, 346 (8th Cir. 1999) ("There can be little doubt that the petitioner's substantial rights are affected if his prison sentence is longer than it should have been.") Thus, as Baker's case is a criminal case where his liberty is at stake, this court "in the exercise of a sound discretion may notice [forfeited error] . . . in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Olano*, 507 U.S. at 735-736 (citations omitted). "The court of appeals should no doubt correct a plain forfeited error that causes the conviction or sentencing of an actually innocent defendant." *Id.* at 736; s*ee also United States v. Mitchell*, 146 F.3d 1338, 1343 (11th Cir.

1998) ("We will, for example, correct a plain forfeited error when it results in the conviction or sentencing of an actually innocent defendant.") Baker, who posted only constitutionally protected speech, is "an actually innocent defendant."

In arguing the expanded review required by *Bose Corporation* is inapplicable, the government contends the decision's recognition of the "obligation to independently review the record to ensure First Amendment protections are not being duly infringed upon" is "dicta." AB at ECF-24. It notes that *Bose* is a libel case and not "relevant to this case." AB at ECF-25. Likewise, according to the government, *Don's Porta Signs, Inc. v. City of Clearwater*, 829 F.2d 1051 (11th Cir. 1987), was seemingly limited to the "regulation of portable signs," AB at ECF-25. *Bose* did cite the libel case of *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), in comparing the requirement of an independent examination of the whole record in First Amendment cases and the requirements of Rule 52(a) of the Federal Rules of Civil Procedure, *Bose Corp.*, at 466 U.S. 499-501, and as an example of its practice of conducting an independent review. 466 U.S. at 508. But the Court explained that "[w]hen the standard governing the decision of a particular case is provided by the

Constitution, this Court's role in marking out the limits of the standard through the process of a case-by-case adjudication is of special importance . . . particularly in those cases in which it is contended that the communication in issue is within one of the few classes of 'unprotected' speech." *Bose Corp.,* 466 U.S. at 503. The Court followed that observation with a series of criminal cases where it independently examined the record, beginning with *Chaplinsky v. New Hampshire,* 315 U.S. 568 (1942) (conviction for violating a New Hampshire statute prohibiting offensive speech), and ending with *Edwards v. South Carolina*, 372 U.S. 229 (1963) (a South Carolina conviction for the common-law crime of breach of the peace). *Bose Corp.*, 466 U.S. at 504-506. It is, then, contrary to the government's claim, a standard of review applicable to "the run-of-the-mill facts in a criminal case with constitutional implications." AB at ECF-26.

In arguing the sufficiency of the evidence, the government relies on Baker's social media posts in the two years before the posts charged in the indictment, statements Baker made before and following his arrest, his possession of firearms, and repeated parsing of the charged postings, none of which, however, address the unlikely nature of a group assaulting

10

the Capitol or the absence of any group planning an assault. Though the government argues Baker's posts "were likely to incite or produce" a "violent encounter," AB at ECF-33, none of the evidence supports the claim. It argues the Inauguration was "imminent[]," *id.*, but the question is, not whether the Inauguration was imminent, but whether any harm posed by the posts was "imminent."

Citing *Noto v. United States*, 367 U.S. 290 (1961), and Baker's "engagement in violent revolt," AB at ECF-33, and more parsing of the posts, the government suggests *Brandenburg*'s requirements are limited to "mere teaching of a resort to violence."[3] *Id.* And while that argument had some validity in prosecutions under the Smith Act, the protection of the First Amendment is not limited to those teaching about resort to violence. As Amici has argued, neither speech that "encourage[s] unlawful acts," *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253

---

[3] *Noto* and another case cited by the government, *Dennis v. United States*, 341 U.S. 494 (1951), addressed violations of the Smith Act, which made it a crime to belong to the Communist Party if a showing was made "that the Party engaged in the advocacy ' not of . . . mere abstract doctrine of forcible overthrow, but of action to that end, by the use of language reasonably and ordinarily calculated to incite persons to . . . action' immediately or in the future." *Nolo* at 296-297, (quoting *Yates v. United States,* 354 U.S. 298, 316 (1957)).

(2002), nor the "mere advocacy of the use of force . . . remove[s] speech from the protection of the First Amendment." *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 927 (1982).

In a footnote, the government says Baker "seems to suggest that the true threat analysis is inappropriate." AB at ECF-32, n. 5. Baker said as much in his initial brief, IB at ECF-40, but maybe a better way of phrasing it would be that Baker's posts are not "true threats" because, for the same reasons they amount to constitutionally protected speech, they cannot objectively be viewed as "serious." Under its heading of *True Threats*, the government cites authority to the effect that true threats may be conditional. AB at ECF-36. While true, whether a threat is conditional is still a consideration in determining whether the threat is "serious." *See United States v. Cox*, 957 F.2d 264, 265 (6th Cir. 1992) ("There is authority for the proposition that a conditional threat may not be the kind of statement that is proscribed by 18 U.S.C. § 875(c)."); *United States v. Dierks,* 978 F.3d 585, 590 (8th Cir. 2020) ("Threatening communications that are not conditional, not clearly political in context . . . are true threats."); *United States v. Sutcliffe*, 505 F.3d 944, 961 (9th

Cir. 2007) ("the conditional nature of a statement may be a factor in determining whether it constitutes a true threat.")

The government adds that "[t]he Defendant's own words make clear that his threats were not conditional," AB at ECF-36, and argues "[Baker's] communications were not conditioned on 'armed racists' being at the Florida Capitol; nor could they reasonably be construed that way." AB at ECF-37. However, the wording of Baker's communications it relies upon, such things as "We will fight back . . . We will circle the state Capitol," AB at ECF-36, are contingent on an "armed racist mob" "storm[ing] the Capitol." Govt. Ex. 1B. If the claim is that the posts can be read to say Baker was recruiting volunteers to kidnap and injure anyone other than those attacking the Capitol, it lacks any evidentiary support.

The government contends, as well, that "[e]ven if the Defendant's references to 'armed racists' were fanciful ideas, a reasonable person could still view the posts as calls to violence because of the context surrounding his actions, and the manner he publicly portrayed himself." AB at ECF-38. In support it cites *United States v. Wheeler*, 776 F.3d 736 (10th Cir. 2015). AB at ECF-38. The test, however, is not whether a

reasonable person would view the posts as "calls to violence," but whether a reasonable person would consider the communication to be "a *serious* expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. at 359 (emphasis added).

In *Wheeler*, the defendant called upon his "'religious followers'" "to kill law enforcement officers, politicians, judges, district attorneys, public defenders and their children" and to "'commit a massacre in the stepping stones preschool and day care,'" which was located a few blocks from the defendant's residence. *Id.* at 738. That the defendant had no religious followers did not prevent the court from finding there was sufficient evidence of a true threat. What was "fanciful," however, was the defendant's ability to carry out the threat, not the existence of a victim. The importance of the distinction rests with "the rationale for excluding true threats from First Amendment protection[:] 'protect[ing] individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur.'" *Wheeler*, 776 F.3d at 745 (quoting *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 388 (1992)). *Wheeler* also emphasized "the reaction of the recipients" of the

14

threat "in determining what constitutes a true threat." 776 F.3d at 745 (internal authority and punctuation omitted). Here, there were no armed racists to react or to protect from the fear of violence.

The government also argues that whether there was a group planning to attack the Capitol "does not alter [Baker's] intent to communicate true threats or his knowledge that they would be viewed as true threats." AB at ECF-37. And while that is relevant to the subjective part of the analysis, the true-threats issue, here, is the objective test.

The government resists Baker's argument that his posts were political, stating that "they did not mention political candidates or parties, and for that matter, did not reference a political election." AB ECF-38. The Court has not, however, defined political speech so narrowly. *See, e.g., NAACP v. Claiborne Hardware Co.*, 458 U.S. at 914 ("speech to protest racial discrimination is essential political speech lying at the core of the First Amendment.") Though the government doesn't acknowledge it, Baker's call to defend the Capitol was about an election. The chain of events that led to Baker's posts began with those who overran the United States Capitol protesting the outcome of the

Presidential election. Baker feared the next chapter would be an assault on Florida's Capitol.

In arguing the evidence was sufficient to support the verdict, the government relies on the holdings in *United States v. Hough*, 803 F.3d 1181, 1188 (11th Cir. 2015) and *United States v. Brown,* 53 F.3d 312 (11th Cir. 1995), to the effect that the jury, in rejecting the testimony of a defendant, may consider it as evidence to the contrary. AB at ECF-41. While, again, that may have been relevant to the determination of Baker's subjective intent, it does not affect the claim here—that the posts were conditioned upon an unlikely event and aimed at a group that didn't exist.

## ISSUE II

> The trial court violated Baker's fundamental due process right to present witnesses in his own defense when it excluded the testimony of law enforcement officers tending to show there was no group planning to attack Florida's Capitol.

The government argues the district court did not "abuse its discretion" because the information Baker sought to introduce—evidence that law enforcement officials had failed to discover any threat to the Capitol—"was not relevant to the ultimate issues before the jury." AB at

ECF-49. It describes the offenses of conviction as having two elements, (a) that of sending a true threat in interstate commerce and (b) the intent to communicate a true threat or knowledge that the communication would be viewed as a true threat, *id.*, but without including the requirement that a "true threat" must be "a serious expression of an intent to commit an act of unlawful violence to a particular individual or individuals." *Virginia v. Black*, 538 U.S. at 359. It ignores the First Amendment requirement that the communication be "directed to inciting or producing imminent lawless action and [] likely to incite or produce such action." *Brandenburg v. Ohio,* 395 U.S. at 447. It also fails to mention the language of the statute, 18 U.S.C. § 875(c), that the threat must be to kidnap or injure a "person." Though conceding in another section of its brief that Baker included a due process objection, AB at ECF-54, n. 12, it argues the standard of review is abuse of discretion, overlooking that "[a] defendant's claim that an evidentiary ruling deprived him of a constitutional right is reviewed *de novo*." *United States*

*v. Ruan*, 966 F.3d 1101, 1152-1153 (11th Cir. 2020), *cert. granted*, 142 S. Ct. 457 (2021).[4]

But that is Baker's argument, that the testimony of the officers would have tended to show the "threat" was not serious, not imminent, or likely to produce physical violence, and there were no persons threatened. His argument is not, as the government contends, that the government had "to prove how many, if any, *other* threats existed at the time the Defendant transmitted his communications." AB at ECF-49. To begin, Baker's "threat" was not directed at the Capitol, so it wasn't a matter of proving there were *other* threats. Rather—given what, on its

---

[4] Baker's due process objection was made in writing in his Motion to Compel, ECF 42 at 4. His argument was that due process required the government to produce whatever information the Federal Bureau of Investigation had about threats to the Florida Capitol and to identify individuals in a position to testify about it. The court denied the motion, ECF 112 at 12, and went on to consider the related issue of the government's motion to quash the subpoenas the defense had served on the Sheriff and Chief of Police. With the consent of the parties, the court treated the government's motion as a motion in limine, *Id.* at 13-14, which the court granted, excluding the testimony. *Id.* at 22. Baker agrees with the government that the due process claim was fairly presented, so it should be reviewed *de novo*. But notably any evidentiary ruling "that violate[s] [a] defendant's due process . . . rights would automatically constitute an abuse of discretion." *United States v. Peaden*, 727 F.2d 1493, 1498 (11th Cir. 1984).

face was the unlikely prospect of a group of armed racists appearing and overrunning the defenses of law enforcement, buttressed by the accounts in the newspaper articles that no threat had been uncovered—the government failed to introduce *any* evidence that a group existed that intended to attack the Capitol. More to the point, the complaint here is the district court—in barring testimony from law enforcement officials that they had been monitoring the situation and had failed to find evidence of *any* threat to the Capitol—excluded evidence that would have tended to prove Baker's threats were not "serious," not likely to produce imminent harm or likely to result in violence, and that no person was threatened.

The evidence Baker sought to introduce had no bearing on his subjective intent, though the government states that "at bottom" even if "law enforcement was unaware" of any threats, "it would not in any way affect the Defendant's intent to communicate his messages or the manner a reasonable person would perceive them." AB at ECF-50. Nor did his attempt to introduce the evidence have anything to do with whether "law enforcement would have to wait . . . to mitigate [a] threat." AB at ECF-51.

With an excerpt from *United States v. Jeri*, 869 F.3d 1247, 1260 (11th Cir. 2017), the government lists four categories of evidence that, if excluded, would violate the Due Process Clause, with the first being "evidence 'directly pertaining to any of the actual elements.'" AB at ECF-52. Here, the excluded evidence, "directly pertain[ed]" to whether there was a true threat, *i.e.*, whether the communications amounted to a "serious" threat, whether any threatened harm was imminent, whether the communications were likely to produce the threatened action, and whether the government had met its burden of fulfilling the statutory requirement that a "person" was threatened. Had the jury heard the excluded testimony, they would have had convincing evidence no group was planning to attack the Capitol, and the likelihood of an acquittal would have been increased.

In that the error is "constitutional," it can be harmless only if the government proves "'beyond a reasonable doubt the error complained of did not contribute to the verdict obtained.'" *United States v. Pon*, 963 F.3d 1207, 1227 (11th Cir. 2020) (quoting *Chapman v. California,* 386 U.S. 18, 22 (1967).) The government has failed to make that showing here, and the remedy is a new trial.

20

## ISSUE III

> The trial court violated Baker's fundamental due process right to present witnesses in his own defense when it excluded David Phillips's testimony regarding the nature and history of the People's Protection Units.

The government argues that "[w]hether friend or foe, the YPG's relationship with the United States was not an issue for the jury to decide and the district court recognized that in excluding the testimony under Rules 401 and 403." AB at ECF-54. In making the argument, it included a footnote alleging the error should be reviewed for "plain error," because the defense "failed to file a written response to the government's motion to exclude David Phillips . . . and similarly failed to raise a constitutional error in open court." AB ECF-54, n. 12.

Up until the trial and after it, the government raised the specter of Baker's connection to "terrorism" by repeating the claim the YPG was a "sub-affiliate of the Kurdistan's Working Party ("PKK") which has been designated a Foreign Terrorist Organization ("FTO") by the United States government." ECF 2 at 4; *see* IB at ECF-58-59. At the trial, the quantity of evidence about the YPG emphasized Baker's role in the YPG and suggested it was important beyond demonstrating familiarity with

weapons or military tactics. That and the nature of it, including a photo of masked men in turbans armed with a rocket launcher and other weapons, s*ee* I.B 44-48, created a risk it would unfairly disadvantage him.

The claim here is not that the government's pre- and post-trial claims would have reached the jurors. Rather, it is that there was a reasonable likelihood members of the jury would look unfavorably on Baker because they may have, as would any member of the public, accessed information similar to that relied upon by the government, had other mistaken or erroneous information about the YPG, held views about the dangerousness of Middle East militant groups, or been unduly influenced by the government's emphasis on Baker's participation in the YPG. *See* ECF No. 112 at 31 (where the trial court, summarizing defense counsel's concern that the emphasis on the YPG would lead the jury to think Baker was dangerous, stated "And that's your argument . . . they [the jury] may attribute some evil intent and think worse of your client.")

According to the government there are "two flaws in the argument," AB at ECF-55: (a) it overlooks the presumption that jurors follow their oath and the absence of evidence it prejudiced Baker and (b) overlooks

the government's announcement it would not admit evidence "relating to the YPG's alignment with nations or foreign terrorist organization." *Id.*

The court instructed the jury that its decision must "be based only on the evidence presented during the trial" ECF No. 116 at 205, 206, and that it could "use reasoning and common sense to make deductions and reach conclusion." *Id.* at 207. The extensive evidence of Baker's involvement with the YPG *was* "evidence presented during the trial." Evidence about the nature of the YPG, based on prior knowledge or assumptions, mistaken or not, was closely aligned with the government's evidence and the nature of it. It's reasonable to think jurors, applying "common sense" would be left with a negative impression of Baker or that jurors saw the in-court or the collective influence of the in-court and out-of-court information to be a permissible consideration. Though the government argues Baker must show the jurors were improperly influenced by the evidence the court deemed admissible or the possible tangle of admitted and extraneous information, there isn't a way to do so.

The government did not introduce testimony claiming the YPG was a terrorist organization or affiliated with one. But it didn't have to. The

undue emphasis on the YPG and the nature of the evidence, intentionally or not, accomplished much the same purpose.

And though there was a real risk the jury was left with an inaccurate and unfairly prejudicial impression, the remedy Baker sought involved only 10 minutes of testimony and, despite the court's conclusion, no risk of confusion. The brief history and description of the YPG Mr. Phillips would have provided was a factual one. Neither the court nor the government has explained what confusion it would have caused.

"[A] defendant must generally be permitted to introduce evidence that, while not directly or indirectly relevant to any of the elements of the charged events, nevertheless tends to place the story presented by the prosecution in a significantly different light, such that a reasonable jury might receive it differently." *United States v. Hurn,* 368 F.3d 1359,1363 (11th Cir. 2004). Baker's claim is the government presented "evidence that cast [him] in an inaccurate, unfavorable light." *Id.* at 1366-1367. "In such situations, the defendant has the right to introduce additional evidence to dispel this unjustified taint, even if that evidence does not directly or indirectly bear on a particular element of the offense." *Id.* at 1367. Here, Mr. Phillips's testimony would have "tend[ed] to place the

24

story presented by the prosecution in a significantly different light, such that a reasonable jury might receive it differently."

The government's argument about plain error lacks any support. Rule 103 of the Federal Rules of Evidence provides that a "party may claim error in a ruling to . . . exclude evidence" "if a party informs the court of its substance by an offer of proof." "The purpose of an offer of proof is to inform the court and opposing counsel of the substance of the excluded evidence and to provide the appellate court with a record sufficient to allow it to determine if the exclusion was erroneous." *Walker v. Kane*, 885 F.3d 535, 538 (8th Cir. 2018).

The defense proffered Mr. Phillips's testimony, ECF 113 at 20-28, and the government and the court questioned him. *Id.* at 28-38. The argument over the admissibility of his testimony involved two hearings, *id.* at 38-43, ECF No. 112 at 27-36, and the argument at the trial. ECF No. 115 at 151-155. The defense complied with the rule and existing precedent. Contrary to the government's claim, there is no requirement of a written pleading, and the claim is preserved.

The standard of review, then, is abuse of discretion. Because the exclusion of Mr. Phillips's testimony violated Baker's due process rights,

the error "automatically constitute[s] an abuse of discretion." *Peaden*, 727 F.2d at 1498. Given the error was constitutional and that the government has not shown "beyond a reasonable doubt the error complained of did not contribute to the verdict obtained," *Chapman v. California,* 386 U.S. at 22, Baker is entitled to a new trial.

## CONCLUSION

Based upon the argument and authority presented in ISSUE I, the Court should reverse the district court's denial of Baker's motion for judgment of acquittal and remand the case with directions to enter a judgment of acquittal on both counts of conviction. Based upon the argument and authority presented in either ISSUE II or ISSUE III, or the cumulative effect thereof, the Court should remand the case to the district court for retrial on both counts or for further consistent proceedings.

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This reply brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

[**X**] this reply brief contains 5,378 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

[ ] this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[**X**] this brief has been prepared in a proportionally spaced typeface using WordPerfect X6 in Century Schoolbook, 14 point, or

[ ] this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

*s/Randolph P. Murrell*_____
**RANDOLPH P. MURRELL**
Federal Public Defender
Attorney for Appellant

28

# CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been furnished electronically in Acrobat format by Internet upload to this Court and to Assistant United States Attorney Lazaro Fields, and by U.S. Mail to Daniel Baker, Reg. No. 25765-509, FCI Memphis, P.O. Box 34550, Memphis TN 38184 all on this 23rd day of March, 2022.

*s/Randolph P. Murrell*
**RANDOLPH P. MURRELL**
Federal Public Defender

29